STATE OF NORTH CAROLINA v. ELWOOD GOODSON, JR.

No. 157A94

(Filed 8 September 1995)

**1. Evidence and Witnesses § 264 (NCI4th)— first-degree murder—victim's reputation for violence—defense of accident**

There was no error in a first-degree murder prosecution in the exclusion of testimony as to the victim's reputation for violence where defendant contended that the killing resulted from an accident. It was held in *State v. Winfrey*, 298 N.C. 260, and *State v. McCray*, 312 N.C. 519, that evidence of a victim's violent character is irrelevant in a homicide case when the defense of accident is raised. Although the Evidence Code subsequently provided in N.C.G.S. § 8C-1, Rule 404 that evidence of a pertinent trait of character of the victim is admissible, "pertinent" was not defined and left intact the rule which holds that the deceased's character is not pertinent in this case.

**Am Jur 2d, Evidence § 373.**

**2. Evidence and Witnesses § 174 (NCI4th)— first-degree murder—defendant's care of victim after DWI arrest—details peripheral**

There was no error in a first-degree murder prosecution in not allowing testimony concerning the victim's arrest for driving while impaired approximately two weeks before she was killed. Defendant offered this evidence to rebut the State's evidence that there was ill will between himself and his wife and was allowed to testify that he procured his wife's release and brought her home. This was the crucial testimony; the details were peripheral to what he was trying to prove.

**Am Jur 2d, Evidence §§ 556, 558.**

**3. Criminal Law § 757 (NCI4th)— first-degree murder—definition of reasonable doubt**

The trial court did not err in its definition of reasonable doubt in its instructions in a first-degree murder prosecution where the court instructed the jury that "[A] reasonable doubt is not a vain or fanciful doubt. . . . Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt." The adjectives "vain" and "fanciful" did not increase the strength of the evidence necessary to create a reasonable doubt, and the use of the adverbs "fully" and "entirely," which mean that the juror must be totally, wholly, and completely satisfied, does not lower the burden of proof to less than a reasonable doubt.

**Am Jur 2d, Trial § 1079.**

**4. Criminal Law § 787 (NCI4th)— first-degree murder—instructions—accident**

The trial court did not err in a first-degree murder prosecution in its instruction on accident where defendant contended that nearly two pages of the transcript are occupied by the final mandate as to the various degrees of homicide of which defendant could be found guilty, but there was only a passing reference to not guilty by reason of accident. The court correctly charged on accident immediately before giving the final mandate and referred to the defense of accident in the final mandate.

**Am Jur 2d, Trial § 1079.**

STATE v. GOODSON

[341 N.C. 619 (1995)]

### 5. Criminal Law § 447 (NCI4th)— first-degree murder—prosecutor's argument—jury in role of victim—no error

There was no error in a first-degree murder prosecution where defendant contended that the prosecutor in his argument asked the jurors to imagine themselves in the role of the victim. Assuming that defendant is right in his contention regarding the argument, it was not error for the court not to intervene *ex mero motu* because nothing in the argument indicates that the prosecuting attorney sought to personalize the experience by assuming the role of the victim. The use of the word "your" (". . . having the gun stuck to the left side of your head and someone to your left pulling the trigger twice and blowing a hole through your head . . .") was at worst a *lapsus linguae* and could not have misled the jury.

**Am Jur 2d, Trial §§ 664-667.**

### 6. Criminal Law § 467 (NCI4th)— first-degree murder—prosecutor's closing argument—use of photographs

There was no error in a first-degree murder prosecution where photographs were introduced to illustrate the medical examiner's testimony and defendant argued that the prosecutor used those photographs to inflame the jury during closing arguments. The medical examiner used the photographs in describing how the bullet entered and excited the victim's skull and the prosecutor used them for the same purpose, drawing a reasonable inference as to the projectile's path based on this evidence.

**Am Jur 2d, Trial § 648.**

### 7. Evidence and Witnesses § 2067 (NCI4th)— first-degree murder—investigating officer—lack of blood on defendant

There was no error in a first-degree murder prosecution where defendant testified that he had cradled his wife's head as he drove to the police station after she had been shot, a deputy testified that there was no significant amount of blood on defendant's shirt, and testified that, in his professional opinion, he would have expected quite a bit of blood. The testimony was peripheral at best to the contested issues in the case and, while the deputy perhaps should not have used the expression "in my professional opinion," he recited only a truism which the jurors undoubtedly knew, that defendant would have had blood on his shirt if he had cradled his wife's bloody head.

**Am Jur 2d, Expert and Opinion Evidence § 199.**

**8. Homicide § 323 (NCI4th)— first-degree murder—evidence sufficient—killing in heat of passion**

There was no error in a first-degree murder prosecution where the trial court denied defendant's motions to dismiss for insufficient evidence of premeditation and deliberation. If there had been insufficient evidence of premeditation and deliberation, defendant would be guilty of second-degree murder and would not be entitled to have the case dismissed. Moreover, while defendant contended that the only inference that can be drawn is that he shot his wife under a violent passion aroused by sufficient provocation, there is no evidence in the case which shows sufficient provocation to arouse the passion of defendant so that he could not form the intent to kill over some period of time, however short, or that he was not in a cool state of blood.

**Am Jur 2d, Homicide §§ 56 et seq., 439.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Duke, J., at the 25 October 1993 Criminal Session of Superior Court, Wayne County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 14 February 1995.

The defendant was tried for the first-degree murder of his wife in a case in which the State did not seek the death penalty. The evidence showed that the defendant and the deceased were married in 1974 and that their marriage was a stormy one. On the evening of 12 November 1992, the couple were arguing in a bar when the defendant told his wife, "I ought to kill you, woman." Later in the evening, the defendant drove his truck into the Town of Mount Olive and shouted to a policewoman to follow him. The policewoman followed the truck to the City Hall. The defendant then told the policewoman that he had shot his wife. The defendant's wife was seated on the passenger side of the truck and had been shot through the head. She died in the hospital.

A Mount Olive policeman testified that he went to the police station and talked to the defendant, who was distraught. He said the defendant told him:

They were coming back from Goldsboro. They had been to a club up there. She wanted to go to another club or another party. He wanted to go home. He pulled the gun, said, I ought to kill you. He pulled the gun up, said he pulled it the first time. It would not go

off. He pulled it the second time and glass went out on the passenger side and his wife, you know, had been shot.

A pathologist testified that in his opinion the wound was a contact wound and that the gun was being held against the head of the victim when it was fired.

The defendant contended the shooting was accidental. He testified that his wife had attacked him on previous occasions while he was driving his truck and showed the jury two scars which he said resulted from her scratching him. He testified further that he and his wife began to argue as they were riding and that she became more and more angry. He was afraid she would strike him, and he removed a .38-caliber revolver from under the armrest in the truck. He realized that the gun had cocked as it was being removed. In order to uncock it, he held the hammer while he pressed the trigger and let the hammer slowly go down. He placed the pistol on his wife's arm, which was on the armrest, and pointed it at the floor of the truck. The defendant said that as he was completing the uncocking of the pistol, his wife jerked her arm and the gun went off.

The defendant was found guilty of first-degree murder. He appealed to this Court.

*Michael F. Easley, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Knox, Knox, Freeman & Brotherton, by H. Edward Knox; Duke & Brown, by John E. Duke; Jonathan S. Williams; and Adrian M. Lapas, for defendant-appellant.*

WEBB, Justice.

[1] In his first assignment of error, the defendant argues two questions pertaining to evidence. He first says it was error for the court to exclude testimony as to the victim's reputation for violence.

The defendant contended that the killing in this case resulted from an accident. In *State v. Winfrey*, 298 N.C. 260, 258 S.E.2d 346 (1979), we held that evidence of a victim's violent character is irrelevant in a homicide case when the defense of accident is raised. The character of the deceased in such a case is not at issue. *See also State v. McCray*, 312 N.C. 519, 324 S.E.2d 606 (1985).

The Evidence Code, chapter 8C of the North Carolina General Statutes, became effective on 1 July 1984, after the trials of the above two cases. N.C.G.S. § 8C-1, Rule 404 provides in part:

STATE v. GOODSON

[341 N.C. 619 (1995)]

(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

   . . . .

(2) Character of victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused

   . . . .

N.C.G.S. § 8C-1, Rule 404 (Supp. 1994). We do not believe this rule changes the law. We required before the rule was adopted that a character trait must be pertinent to be admissible. The rule does not define "pertinent," and we believe it left intact our rule which holds that the deceased's character is not pertinent in this case. It was not error to exclude this testimony.

**[2]** The defendant next argues that it was error not to allow him or a highway patrolman to testify about the details of the victim's arrest for driving while impaired approximately two weeks before she was killed. He offered this evidence to rebut the State's evidence that there was ill will between him and his wife. The defendant was allowed to testify that he procured his wife's release and brought her home after she had been taken to jail for driving while impaired. This was the crucial testimony for defendant to prove he had good will toward his wife. The details as to how she was arrested were peripheral to what he was trying to prove. It was not error to exclude this testimony.

This assignment of error is overruled.

**[3]** The defendant next assigns error to the court's definition of reasonable doubt in its preliminary instructions and in its charge to the jury. The defendant takes exception to the following instruction: "[A] reasonable doubt is not a vain or fanciful doubt. . . . Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt." The defendant, relying on *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1990), *overruled by Victor v. Nebraska*, 511 U.S. ——, 127 L. Ed. 2d 583 (1994), argues that this language lowers the standard for the State's burden of proof.

We find no error in these instructions. "Vain" is defined in *Webster's Ninth New Collegiate Dictionary* as "having no real value." Webster's Ninth New Collegiate Dictionary 1301 (1991). "Fanciful" is

defined as "marked by fancy or unrestrained imagination rather than by reason and experience." *Id.* at 448. The court, by using the two adjectives to demonstrate what is not a reasonable doubt, did not increase the strength of the evidence necessary to create a reasonable doubt. "Fully" is defined in *Webster's Ninth New Collegiate Dictionary* as "in a full manner or degree; completely." *Id.* at 497. "Entirely" is defined as "to the full or entire extent; completely." *Id.* at 415. We do not believe the use of adverbs that mean the juror must be totally, wholly, and completely satisfied lowers the burden of proof to less than a reasonable doubt.

This assignment of error is overruled.

[4] The defendant next assigns error to the charge of the court on accident. The court charged on accident immediately prior to giving its final mandate. At the end of the final mandate, the court charged that if the jury found the death was an accident, it should find the defendant not guilty. The defendant, relying on *State v. Dooley*, 285 N.C. 158, 203 S.E.2d 815 (1974), says that nearly two pages of the transcript are occupied by the final mandate as to the various degrees of homicide of which he could be found guilty, while there was only a passing reference to a verdict of not guilty by reason of accident. He says this was error.

The court correctly charged on accident immediately before giving the final mandate. It then referred to the defense of accident in the final mandate. We believe the jury must have understood the defense of accident. *Dooley* does not govern this case. In that case, the court did not charge in the final mandate that the jury should find the defendant not guilty if it found the defendant acted in self-defense. *Dooley*, 285 N.C. at 166, 203 S.E.2d at 820. We said, without a self-defense charge, the jury could have assumed a verdict of not guilty by reason of self-defense was not a permissible verdict. *Dooley*, 285 N.C. at 166, 203 S.E.2d at 820. In this case, the jury was told in the final mandate that if the jury believed the death of the victim was caused by an accident, it would find the defendant not guilty.

This assignment of error is overruled.

[5] The defendant next argues that he should have a new trial because of an improper jury argument by the prosecuting attorney. He concedes no objection was interposed when the argument was made, but he contends it was so egregious that the court should have intervened *ex mero motu. State v. Howell*, 335 N.C. 457, 439 S.E.2d 116 (1994).

STATE v. GOODSON

[341 N.C. 619 (1995)]

The defendant says the prosecuting attorney asked the jurors to imagine themselves in the role of the victim, which was improper. He concedes there are no cases which so hold in this jurisdiction but cites cases from other jurisdictions. *State v. White*, 246 S.C. 502, 144 S.E.2d 481 (1965); *McReynolds v. Commonwealth*, 177 Va. 933, 15 S.E.2d 70 (1941).

The argument to which the defendant objects was as follows:

If you look at the facts, it is very hard to believe anything the defendant said. He doesn't mention anything at all to anybody about the gun being to her head in any fashion until he took the stand and then he tried to explain it away but you look at the facts and it is very hard to reconcile what the physical facts are in his version. They just don't fit. What it does fit, what the physical facts do fit is with some one [sic] being a driver, pulling out a gun and someone sitting up in an almost upright position and having the gun stuck to the left side of *your* head and someone to *your* left pulling the trigger twice and blowing a hole through *your* head all the way out the window.

(Emphasis added.) The defendant argues that the prosecuting attorney, by using the terms "your head" and "your left," asked the jurors to put themselves in the place of the victim.

Assuming the defendant is right in his contention that a prosecuting attorney may not ask jurors to place themselves in the position of the victim, we do not believe it was error for the court not to intervene *ex mero motu*. Nothing in the argument indicates that the prosecuting attorney sought to personalize the experience by assuming the role of the victim. The use of the word "your" could not have misled the jury. At worst, it was a *lapsus linguae* that did no harm.

*State v. Williams*, 317 N.C. 474, 346 S.E.2d 405 (1986), upon which the defendant relies, is not helpful to him. In that case, the prosecutor's argument was not based on the evidence, which is not so in this case.

This assignment of error is overruled.

[6] The defendant also contends the prosecutor improperly utilized photographs introduced solely for the purpose of illustrating the medical examiner's testimony. The defendant asserts that during arguments, these photographs were employed to inflame the passions and prejudices of the jury.

STATE v. GOODSON

[341 N.C. 619 (1995)]

The portion of the argument to which the defendant objects included:

> Now what do the facts show. The facts show clearly, particularly when you look at the autopsy pictures, that and you look at the overall picture where on the left side of her head was the entrance wound which the doctor described as a contact wound. It comes out on the right side, which is depicted by this picture and you see a little bit more clearly in this picture where the bullet comes in a little bit over the ear, comes out over here a little bit above her ear on the right side and keeps going through the window which would indicate I would argue to you someone sitting up in the pickup truck, someone to your left with a gun that's pointed on the left side of their head and sticking it and pulling the trigger as he said twice.

"A prosecutor in a criminal case is entitled to argue vigorously all of the facts in evidence, any reasonable inference that can be drawn from those facts and the law that is relevant to the issues raised by the testimony." *State v. Maynard*, 311 N.C. 1, 14-15, 316 S.E.2d 197, 205, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984); *accord State v. Quesinberry*, 325 N.C. 125, 140, 381 S.E.2d 681, 691 (1989), *sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 328 N.C. 288, 401 S.E.2d 632 (1991). The photographs were admitted into evidence for illustrative purposes, and the medical examiner utilized them in describing how the bullet entered and exited the victim's skull. The prosecutor used the photographs for the same purpose and drew a reasonable inference as to the projectile's path based on this evidence. We find no error and certainly no error arising to the level of gross impropriety.

This assignment of error is overruled.

[7] The defendant next assigns error to the failure of the court to strike the testimony of George Ratcher, a deputy sheriff who investigated the case. Deputy Ratcher testified that the defendant told him that after his wife was shot, he cradled her head as he drove her to the police station. The following colloquy then occurred:

> Q. Now what do you recall Mr. Goodson saying concerning this shooting incident, sir?
>
> A. . . . It was noted that Goodson, although he said he craddled [sic] his wife, there was no significant amount of blood on his shirt.

Q.  What do you mean no significant amount of blood?

A.  . . . In my professional opinion if he had held her or craddled [sic] her, I would think there would be quite a bit of blood on his shirt.

The defendant argues that this was improper testimony designed to impeach him by saying he was lying. He says that Deputy Ratcher had no personal knowledge upon which to make the statement and that Ratcher's "professional opinion" was based on nothing. This testimony by Deputy Ratcher was peripheral at best to the contested issues in the case. He recited only a truism which the jurors undoubtedly knew, that if the defendant cradled his wife's bloody head, he would have had blood on his shirt. Perhaps Deputy Ratcher should not have used the expression "in my professional opinion," but we are confident this expression had no effect on the jury.

This assignment of error is overruled.

[8]  The defendant's last assignment of error is to the denial of his motion to dismiss made at the close of the evidence and his motion to set aside the verdict. He says there was not sufficient evidence to support findings of premeditation and deliberation. If we were to hold there is not sufficient evidence of premeditation and deliberation, the defendant would not be entitled to have the case dismissed. He would be guilty of second-degree murder. *State v. Fleming*, 296 N.C. 559, 251 S.E.2d 430 (1979).

The defendant concedes there was sufficient evidence of an intent to kill. He says that the parties had been quarreling all night, and the only inference that can be drawn is that he shot his wife under a violent passion aroused by sufficient provocation. We do not believe there is any evidence in the case which shows sufficient provocation to arouse the passion of the defendant so that he could not form the intent to kill over some period of time, however short, or that he was not in a cool state of blood. The defendant was upset with his wife but not justifiably to the extent to excuse him of first-degree murder. *State v. Patterson*, 335 N.C. 437, 439 S.E.2d 578 (1994).

This assignment of error is overruled.

NO ERROR.