STATE OF NORTH CAROLINA v. LEON JEROME DAVIS

No. COA05-650

(Filed 4 April 2006)

**1. Criminal Law— self-defense—omitted from final mandate—reversed**

The failure to include not guilty by reason of self-defense in the final mandate was prejudicial error requiring a new trial in a prosecution for discharging a firearm into occupied property.

**2. Homicide— self-defense—no duty to retreat—not included in instruction**

The failure to instruct the jury that defendant had no duty to retreat when met with deadly force was plain error in a prosecution resulting in a second-degree murder conviction where there was evidence that defendant was not the initial aggressor. In the absence of the instruction, the jury may have believed that defendant acted with malice.

**3. Evidence— victim impact—guilt/innocence phase**

In a case remanded on other grounds, it was noted that victim impact evidence is generally inadmissible during the guilt-innocence phase of a trial.

Appeal by defendant from judgment entered 3 September 2004 by Judge Jesse B. Caldwell, III in Gaston County Superior Court. Heard in the Court of Appeals 6 March 2006.

*Roy A. Cooper, III, Attorney General, by Diane A. Reeves, Special Deputy Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by Kelly D. Miller, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was charged with first degree murder and discharging a firearm into occupied property. A jury convicted him of second degree murder and discharging a firearm into occupied property. He appeals from a judgment entered upon the verdicts sentencing him to an active term of imprisonment of a minimum of 189 months and a maximum of 236 months.

STATE v. DAVIS

[177 N.C. App. 98 (2006)]

The State presented evidence at trial which tended to show that on 28 September 2002, Donnie Moose (Moose), Jeremy Stowe (Stowe), Chris Bumgardner (Bumgardner) and Johnny Lowery (Lowery) were riding together in Moose's car. The four men decided they wanted to purchase some marijuana and drove to Cleveland Avenue in Gastonia, North Carolina. While the others remained in the car, Lowery approached two black men and purchased a bag of "grass." As they were driving away, Lowery looked into the bag and discovered the contents consisted of lawn grass instead of marijuana. The men returned to Cleveland Avenue where Lowery confronted Kareem Craig, the smaller of the men who had sold them the counterfeit marijuana. According to Moose, he heard a shot and saw Lowery holding a gun. Lowery got back into the car, telling Moose to go. They drove up Cleveland Avenue to make a U-turn at the end of a cul-de-sac and, as they were returning down the street, they saw Lou Brice, the other man who had sold them the counterfeit marijuana, coming out of the woods. Lowery told Moose to stop the car and got out and confronted Brice. The two men conversed and then Lowery "jumped into the car and said go." Moose testified that he heard shots and drove away.

Moose further testified that as they were driving away, Lowery had his arm out the passenger-side door, and Moose was "pretty sure" and "believed" that Lowery had "fired back." They drove to the apartments where Lowery resided, where they discovered that Stowe had been shot and appeared dead. After the police were notified, Lowery was transported to the hospital where he was treated for a gunshot wound to the hand. A pathologist testified that Stowe died as a result of a gunshot wound which severed his spinal cord and damaged his brain and that the wounds were consistent with someone crouching in the backseat of a vehicle when a bullet entered through the trunk. There were bullet holes on the trunk, spoiler, passenger side door, and rear passenger seat of Moose's vehicle.

Eyewitnesses Kendra Powell and Timothy Byrd also testified. Powell recounted how she watched Brice arguing with another man on the street in front of her house. She saw a third man walk by and go towards the apartments behind her house. He returned "shooting" but prior to his return, at least two shots were fired. The person from the apartments fired back at the ground, and "before the car took off, one more shot was fired from the car." Powell testified that she had never seen defendant before, and while she knew Kareem Craig, she did not recall seeing him on the night of the shooting. Timothy Byrd

testified that he witnessed the argument as well, that he did not know either man, and that the man from the car shot first, and the other man "fired back."

Brice testified that he was defendant's uncle, that he sold Lowery the lawn grass on the night of 28 September, and then left Cleveland Avenue. When he was returning to Cleveland Avenue, he heard Lowery talking to his cousin, Kareem Craig, and also heard "a couple of gunshots." As Brice stayed behind a house, Lowery got back into the car, and the men began to pull away. However, they apparently saw him and stopped. Lowery again got out of the car and demanded his money, waving his gun around. Brice heard some more shots, saw Lowery jumping into the car, and Brice ran away. At some point, Brice saw defendant and asked him for his gun, but defendant told him that "Johnny [Lowery] ain't going to do nothing." However, Brice testified that Lowery had "his hand out the window" shooting and then defendant shot back.

Neal Morin, special agent with the State Bureau of Investigation, testified that there were strong characteristics between the gun defendant provided to police and the bullet removed from Stowe, but "there was insufficient detail to make a conclusive determination."

Defendant testified in his own behalf that on the night of the shooting, he was sitting in his automobile when he heard a gunshot and saw the white car. He explained that he kept a gun with him because his neighborhood was violent and people frequently are mistaken for others. He spoke with his cousin, Kareem Craig, who told him that Lowery had just shot at him. Defendant watched the white car begin to leave, but it stopped as he saw Brice, his uncle, come from behind a house. Lowery jumped out of the white car and appeared to be waving his gun and arguing with his uncle.

Defendant testified that when Brice asked him for his gun, "I told him hell, no, he couldn't have my gun. Johnny wasn't going to do that." As defendant and Brice walked off, "[Lowery] jumped in[to the white car] and fired a shot back. I fell over, shot back at him." Defendant stated that he was approximately 15 to 20 feet to the rear of the car when Lowery shot at him. He explained that he believed Lowery "was trying to shoot me. That's why the gun was pointed at me. I was the only person walking there."

Defendant further testified that he did not intend to kill Lowery and did not even know there were other passengers in the car, but

that once he did, he fired at the ground in order to avoid hitting them. Defendant stated that he shot at Lowery because he was afraid that Lowery was going to shoot him, and he had never been shot at before. He explained that the first he heard of Stowe's death was when he learned about the arrest warrant, and he voluntarily turned himself in and made a statement to police because he "had nothing to hide."

On appeal, defendant argues that the trial court erred by 1) failing to include in its final mandate to the jury on the charge of discharging a firearm into occupied property the possible verdict of not guilty by reason of self-defense, 2) failing to instruct the jury that defendant did not have a duty to retreat, 3) permitting victim impact testimony in the guilt or innocence phase of the trial, and 4) admitting certain extra-judicial statements of two State witnesses which defendant contends were hearsay. After careful review, we conclude defendant is entitled to a new trial by reason of error in the trial court's instructions to the jury. In view of our award of a new trial on these grounds, we will not discuss defendant's remaining assignments of error as they may not recur at his new trial.

I.

[1] Defendant argues that the trial court erred in failing to instruct the jury that it could find defendant not guilty by reason of self-defense in its final mandate upon the charge of discharging a firearm into occupied property. It is prejudicial error to fail to include "[a] possible verdict of not guilty by reason of self-defense . . . in the final mandate to the jury." *State v. Williams*, 154 N.C. App. 496, 499, 571 S.E.2d 886, 888 (2002). This error warrants a new trial. *State v. Ledford*, 171 N.C. App. 144, 146, 613 S.E.2d 726, 727 (2005).

In this case, the trial court properly instructed the jury on first degree murder under the felony murder rule, with the relevant underlying felony being discharging a firearm into occupied property. The trial court included not guilty by reason of self-defense in this instruction, and in the instruction on the lesser included offense of second degree murder. In its final mandate on the murder charge, the trial court included as a possible verdict that defendant could be found not guilty by self-defense. Subsequently, the trial court instructed the jury with respect to the elements of the crime of discharging a firearm into occupied property, explaining self-defense as a justification or excuse for the act in the body of the instruction. However, when giving the final mandate with respect to the charge of discharging a firearm into occupied property, the trial court did not instruct the jury

that it could return a verdict of not guilty as to that charge if it found defendant had acted in self-defense. The trial court continued with its general jury instructions and, as it was late in the day, excused the jurors for the evening recess. When the court reconvened the next morning, the trial court re-instructed the jury on second degree murder, voluntary and involuntary manslaughter, including the instruction that it could find defendant not guilty by reason of self-defense, but gave no additional instructions on the charge of discharging a firearm into occupied property nor any final mandate on that charge which permitted the jury to find the defendant not guilty of the charge by reason of self-defense. The failure to include not guilty by reason of self-defense in the final mandate is prejudicial error, *State v. Williams, supra.*, and we must therefore grant defendant a new trial on the charge of discharging a firearm into occupied property.

## II.

**[2]** Defendant also argues the trial court committed plain error in failing to instruct that defendant had no duty to retreat. Since defendant neither requested the instruction nor objected to the court's failure to give the instruction, we review the assignment of error under the plain error standard. *See State v. Davis*, 349 N.C. 1, 28, 506 S.E.2d 455, 470 (1998) (although defendant did not preserve the error for review at trial, the plain error rule permits review of alleged errors affecting substantial rights), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999).

> The plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done"[ . . .] or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Lemons*, 352 N.C. 87, 96-97, 530 S.E.2d 542, 548 (2000) (emphasis in original, citations omitted), *cert. denied*, 531 U.S. 1091, 148 L. Ed. 2d 698 (2001).

A comprehensive self-defense instruction requires instructions that a defendant is under no duty to retreat if the facts warrant it, and it is error for the trial court not to give this instruction if it is requested. *State v. Everett*, 163 N.C. App. 95, 100, 592 S.E.2d 582, 586 (2004). Moreover, "[i]f an instruction is required, it must be compre-

hensive." *Id. (quoting State v. Brown,* 117 N.C. App. 239, 241, 450 S.E.2d 538, 540 (1994), *cert. denied,* 340 N.C. 115, 456 S.E.2d 320 (1995)). "There is *no* duty to retreat when . . . confronted with an assault that threatens death or great bodily harm." *Everett,* 163 N.C. App. at 100, 592 S.E.2d at 586 (emphasis in original, citations omitted). Where a defendant's right to stand his ground and shoot an assailant in self-defense is a "substantial feature" of a defense, it is error for the trial court to fail to give the instruction, "even in the absence of a special request therefor." *State v. Ward,* 26 N.C. App. 159, 162, 215 S.E.2d 394, 396 (1975); *see also State v. Hudgins,* 167 N.C. App. 705, 708, 606 S.E.2d 443, 446 (2005) (awarding new trial where trial court failed to instruct on necessity defense despite defendant's presentation on all the elements of the defense).

In the present case, there was testimony from the State's own witnesses that defendant returned fire only after Lowery shot at him after arguing with Brice and Craig. According to such evidence, defendant was not the initial aggressor and his right to stand his ground was at least a "substantial feature" of his defense of self-defense. The jury found the defendant guilty of second degree murder: that defendant wounded the victim with a deadly weapon, acting intentionally and with malice, which was defined in pertinent part as arising "from an act which is inherently dangerous to human life" and "is intentionally done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief." Without an instruction that defendant had the right to stand his ground when met with deadly force, the jury may have believed that defendant acted with malice, requiring it to return a verdict of guilty of second degree murder. Since this instructional error had a probable impact on the jury's finding of guilt, this error was prejudicial. Therefore, we hold the trial court's failure to give the instruction was plain error entitling defendant to a new trial as to both the murder charge and the charge of discharging a firearm into occupied property.

## III.

[3] In light of our award of a new trial, we need not discuss defendant's remaining assignments of error, as they are unlikely to occur at defendant's retrial. We note, however, that while a trial court's rulings on relevancy are given great deference on appeal, even though they "technically are not discretionary and therefore are not reviewed under the abuse of discretion standard[,]" *State v. Wallace,* 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *cert. denied,* 506 U.S. 915,

121 L. Ed. 2d 241 (1992), victim-impact evidence is generally inadmissible during the guilt/innocence phase of a trial. *State v. Maske*, 358 N.C. 40, 50, 591 S.E.2d 521, 528 (2004). Thus, we urge caution against admission of such victim-impact testimony during the State's guilt/innocence case on retrial.

New Trial.

Judges WYNN and STEPHENS concur.