STATE OF NORTH CAROLINA v. JOE LOUIS WITHERS

No. COA05-1241

(Filed 5 September 2006)

## 1. Appeal and Error— preservation of issues—instructions

An argument concerning a request for a self-defense instruction was preserved for appellate review by defendant's request for the instruction and the trial court's assurance that it would be given.

## 2. Homicide— self-defense—instruction not given in final mandate

The trial court's failure to specifically instruct the jury on self-defense in the final mandate was reversible error. The jury could have assumed that not guilty by reason of self-defense was not a permissible verdict.

## 3. Homicide— defense of home—duty to retreat and use of force—failure to instruct

The trial court committed plain error in a first-degree murder case by failing to instruct the jury that if it found defendant was not the aggressor, defendant did not have a duty to retreat, but could stand his ground, repel force with force, and increase the amount of force used. The jury could have found, under the circumstances, that defendant was not the aggressor and was attacked in his home or on his premises; without the instruction, the jury may have believed that defendant acted with malice.

## 4. Homicide— defense of home—porch and doorway

In a case remanded on other grounds, an instruction on defense of home did not improperly narrow the jury's focus to activities on defendant's porch. There was conflicting evidence

about whether defendant was inside his doorway or on his porch at the time of the shooting and the court instructed that the jury could find the porch to be part of the home. The court did not foreclose the possibility of finding that defendant acted to prevent the victim from entering his home.

**5. Trespass— right to remove trespasser—deadly force not permitted**

It was not permissible for defendant to use deadly force to remove a trespasser. The trial court did not err (in a first-degree murder case remanded on other grounds) by not giving an instruction that defendant had the right to evict trespassers from his property, regardless of whether the victim was in defendant's home.

**6. Discovery— identity of confidential informant—not disclosed**

Defendant's motion to disclose the identity of a confidential informant was properly denied in an action remanded on other grounds. The factors favoring nondisclosure outweigh those favoring disclosure.

Judge STEELMAN concurring.

Appeal by defendant from judgment entered 7 April 2005 by Judge Judson D. DeRamus, Jr. in Superior Court, Guilford County. Heard in the Court of Appeals 17 May 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Diane A. Reeves, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Keischa M. Lovelace, for defendant-appellant.*

McGEE, Judge.

Joe Louis Withers (defendant) was convicted of first degree murder of Terrell Walker (Walker) in a judgment entered 7 April 2005. The trial court sentenced defendant to life imprisonment without parole.

At trial, the State's evidence tended to show the following. Ronald Hayes (Hayes) testified he was at defendant's home with defendant, Timothy McCoy (McCoy), and Rashay Latonya Saunders Lockett (Lockett) on 19 March 2004. Defendant and McCoy left defendant's home and Hayes stayed with Lockett. Hayes testified that after defendant and McCoy left, Walker came to defendant's home, "pulled

STATE v. WITHERS

[179 N.C. App. 249 (2006)]

out some dope and . . . put it on the end table, and . . . started counting money." Hayes saw Walker sell drugs in defendant's home.

Hayes testified that when defendant and McCoy returned, Walker started "foulmouthin[g]" two women who had arrived at defendant's home with Andy Graham (Graham), and defendant told Walker to leave. Walker did not leave but instead threatened defendant by saying, "I'll kick your ass." Walker stood over defendant in an attempt to scare defendant. Defendant went to get his rifle and Hayes and McCoy "[wrestled]" Walker out of defendant's home. When Walker left, defendant put down his rifle.

Walker then started kicking the front door from outside and looking through the windows at the top of the door. Defendant picked up his rifle and walked towards the door. McCoy grabbed the rifle from defendant, and the rifle went off inside the house, hitting the air conditioner. Hayes testified that

> [e]verybody ducked, and [defendant] stepped out, he just stepped right outside the door on the porch. That's when [defendant] told [Walker], he said, "I told you to leave, but you don't believe I'll do nothin[g] to you," and that's when I heard the first shot. I didn't count the shots after that.

McCoy testified that when defendant asked Walker to leave defendant's home, Walker "kept cussin[g], called [defendant] an old bastard, you son-of-a-bitch, f— you, you're a wangster, I'm a gangster, and all of that s— to [defendant]." McCoy heard Walker tell defendant he was going to "kick [defendant's] ass" and saw Walker tower over defendant in an attempt to scare defendant.

McCoy testified that Graham escorted Walker out of defendant's home, but Walker then kicked the door repeatedly and looked through the windows at the top of the door. Defendant got his rifle and McCoy stood in front of the door and told defendant that he would not let defendant go outside. Defendant's rifle misfired, hitting the air conditioner, and McCoy got out of the way. McCoy testified:

Q. What happened after you got out of the way?

A. [Defendant] opened the front door up, opened the screen door, [Walker] was still standing on the porch. And [defendant] just stood there looking at [Walker]. [Defendant] ha[d] the barrel of the [rifle] in his hand, like this. [Defendant] didn't have his

hand on the trigger. He was talking to [Walker]. He said, "Boy, you don't think I'll shoot you?" [Walker] was still there talking s—, and I was like, "[Walker], shut up. Just be quiet."

Then [Walker] walked out in the yard. [Defendant] walked on the sidewalk. [Walker] stood between [defendant's] car and his car. [Walker] told [defendant], "F— you." [Defendant] said, "Boy, you still don't think I'll fire your ass up, do you?" And [Walker] said, "F— you," and [defendant] fired [at] him."

McCoy testified that after defendant shot Walker the first time, Walker said he was "going to get his s—," which McCoy understood to mean Walker was going to get his gun. McCoy testified that defendant shot Walker again.

Graham testified that defendant was in the doorway of defendant's home when defendant fired the first shot at Walker. Lockett, who was also at defendant's home on 19 March 2004, testified as follows:

Q. Okay. Do you recall telling Detective Hosier that you heard [defendant] saying, "Oh, you're reaching for your s—, go ahead and reach for your s—"?

A. Yeah.

Q. Did you hear [defendant] say that?

A. Yeah, [defendant] said, "Oh, what [are] you reaching for."

Defendant testified that Walker had tried to sell drugs out of defendant's home three or four times prior to 19 March 2004. Each time, defendant had told Walker he could not sell drugs out of defendant's home. Walker came to defendant's home at approximately 8:00 or 8:30 p.m. on 19 March 2004 and defendant told him to leave. Walker left defendant's home to sell drugs next door.

Defendant left his house and later returned to find Walker "sitting in the living room on the couch, with a bunch of dope on [defendant's] table, cutting it up and bagging it up." Defendant told Walker he could not sell drugs in defendant's home and told Walker to leave, but Walker refused. Defendant got his rifle while Hayes and McCoy removed Walker from defendant's home. Once Walker was outside, defendant put down his rifle. However, shortly thereafter, Walker began kicking the door and looking through the window into defend-

ant's home. As he was kicking the door, defendant testified Walker said: "Open the so-and-so door. I ain't leavin[g] nowhere till I get my money back."

Defendant picked up his rifle, went to the door and told McCoy that "the man's gonna tear my door down. I['ve] got to do something." When defendant opened the door, Walker had stepped off the porch and was standing next to his car, about seven or eight feet away from defendant. Defendant again told Walker to leave. Defendant testified:

> [Walker] started towards me, and [there is] a pole there on the corner of the, uh, the porch. [Walker] started towards me. [There is] a bush there. [Walker's] car, uh, the bushes [were] at the back of his car, and there's a pole there to hold up the porch. He started toward me, and he reached up to that pole, and he slipped. And when he slipped, I fired, [because] I didn't know whether he was grabbing me. I didn't know what was going on.

> Q. Okay. Why did you shoot [Walker]?

> A. [Because] I was scared that he was fixin[g] to do something to me, fixin[g] to kill me or whatever. I was afraid.

Defendant further testified that he shot Walker again when Walker was stooping over his open trunk about four or five feet away from defendant.

> Q. Okay. Why did you shoot [Walker] the second time?

> A. Because when he [came] out [of] that trunk, I didn't know what he was coming out of that trunk with, [because] I knew he had an AK-47.

> Q. Okay. Did you see a gun in his hand when he turned?

> A. I saw something. I won't swear to it that it was a gun. I saw something. It was a quick flash, and that was it.

> . . .

> Q. . . . how long had you known [Walker]?

> A. No more than six months.

> Q. In the prior months, had you seen him with an AK-47?

>     [THE STATE]: Objection.

A. Yes, sir, I did.

THE COURT: Overruled.

. . .

Q. Okay. But you did see him with an assault—

A. I [saw] him the same night I got [my .22 automatic rifle].

Q. And this was how many weeks before this incident?

A. A month or so before then.

Defendant testified he was sixty-eight years old, disabled, five feet, eleven inches tall, and weighed 155 pounds. The medical examiner testified that Walker was twenty-six years old, six feet, six inches tall, and weighed 272 pounds.

At the jury instruction conference, defendant requested an instruction on self-defense and the trial court stated that it would instruct the jury on self-defense using N.C.P.I.—Crim. 206.10. Defendant also requested an instruction on defense of habitation in accordance with N.C.P.I.—Crim. 308.80. Defense counsel further stated:

> Judge, I would ask the Court, on Footnote 1, it talks about *State versus Blue*, and specifically it says that the defense of habitation can be applicable to the porch of a dwelling under certain circumstances, and somewhere I've got a copy of that case with me. I believe they said that was a call best left to the jury.
>
> . . .
>
> And as far as where [defendant] was standing, [defendant] testified he was standing on the porch, but Andy Graham, one of the State's witnesses, testified that [defendant] was standing in [defendant's] doorway when [defendant] shot [Walker] those couple of times. So [defendant] was in the doorway. So I basically would contend that in this case, the porch could be considered a part of the house.

The trial court agreed to give an instruction on defense of habitation; however, the trial court stated it would modify the instruction in accordance with *State v. Blue*, 356 N.C. 79, 565 S.E.2d 133 (2002). The portions of the jury instructions given by the trial court which are necessary to a discussion of the issues on appeal are set forth in the analysis.

I.

Defendant first contends he is entitled to a new trial because the trial court erred by failing to instruct on not guilty by reason of self-defense as a possible verdict in its final mandate to the jury. We agree.

**[1]** The State contends defendant did not preserve this argument for appellate review and, therefore, we must first determine this issue. Defendant requested an instruction on self-defense at the jury instruction conference. The trial court stated it would instruct the jury on self-defense using N.C.P.I.—Crim. 206.10. Pursuant to N.C.P.I.—Crim. 206.10 (2005), the following instruction should have been given in the trial court's final mandate to the jury:

> And finally, if the State has failed to satisfy you beyond a reasonable doubt that the defendant did not act in self-defense then the defendant's action would be justified by self-defense; therefore, you would return a verdict of not guilty.

The State concedes the trial court did not instruct the jury in the final mandate that it would be its duty to return a verdict of not guilty if they found that defendant acted in self-defense. In *State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988), our Supreme Court recognized that

> a request for an instruction at the charge conference is sufficient compliance with [Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure] to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.

As in *Ross*, defendant's request for the self-defense instruction, and the trial court's assurance that it would instruct the jury in accordance with N.C.P.I.—Crim. 206.10, preserved this argument for appellate review. *See Ross*, 322 N.C. at 265, 367 S.E.2d at 891.

**[2]** Our Supreme Court held in *State v. Dooley*, 285 N.C. 158, 203 S.E.2d 815 (1974), that the trial court's failure to include an instruction on self-defense in its final mandate to the jury was reversible error that entitled the defendant to a new trial. *Id.* at 166, 203 S.E.2d at 820; *see also State v. Ledford*, 171 N.C. App. 144, 613 S.E.2d 726 (2005); *State v. Williams*, 154 N.C. App. 496, 571 S.E.2d 886 (2002); *State v. Kelly*, 56 N.C. App. 442, 289 S.E.2d 120 (1982). Our Supreme

Court further held in *Dooley* that "[b]y failing to so charge, the jury could have assumed that a verdict of not guilty by reason of self-defense was not a permissible verdict in the case." *Dooley*, 285 N.C. at 166, 203 S.E.2d at 820.

Relying upon *State v. Goodson*, 341 N.C. 619, 461 S.E.2d 740 (1995), the State argues defendant was not prejudiced by the trial court's failure to include an instruction on self-defense in the final mandate because the instruction as a whole was adequate. In *Goodson*, the defendant was convicted of first degree murder and argued the trial court erred by making only a passing reference to a verdict of not guilty by reason of accident in its final mandate to the jury. *Id.* at 623-25, 461 S.E.2d at 742-43. However, our Supreme Court recognized that the trial court correctly charged the jury on accident immediately before giving the final mandate. *Id.* at 625, 461 S.E.2d at 743. Moreover, the trial court did instruct the jury in the final mandate that "if the jury believed the death of the victim was caused by an accident, it would find the defendant not guilty." *Id.* at 625, 461 S.E.2d at 744. Accordingly, our Supreme Court held the trial court did not err. *Id.*

In the present case, unlike in *Goodson*, the trial court failed in the final mandate to instruct the jury that if it found defendant had acted in self-defense, it should find defendant not guilty. Therefore, as in *Dooley*, "the jury could have assumed that a verdict of not guilty by reason of self-defense was not a permissible verdict in the case." *See Dooley*, 285 N.C. at 166, 203 S.E.2d at 820. We thus hold that the trial court's failure to specifically instruct the jury as to a verdict of not guilty by reason of self-defense in the final mandate was reversible error, and we remand for a new trial. *See Id.* We address defendant's remaining assignments of error because the issues are likely to recur upon retrial.

II.

[3] Defendant argues the trial court committed plain error by failing to instruct the jury, as part of its instruction on self-defense, that defendant (1) did not have a duty to retreat, (2) had the right to stand his ground, and (3) had the right to repel force with force and to increase the amount of force used. In *State v. Blue*, 356 N.C. 79, 565 S.E.2d 133 (2002), our Supreme Court recognized that

"[o]rdinarily, when a person who is free from fault in bringing on a difficulty [] is attacked in his own home or on his own

premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm."

*Id.* at 86, 565 S.E.2d at 138 (quoting *State v. Johnson*, 261 N.C. 727, 729-30, 136 S.E.2d 84, 86 (1964)). The Court also held: "Further, defense of the person within one's premises includes not only the dwelling, but also the curtilage and buildings within the curtilage." *Id.* "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to [the] defendant." *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988). "If an instruction is required, it must be comprehensive." *State v. Brown*, 117 N.C. App. 239, 241, 450 S.E.2d 538, 540 (1994), *cert. denied*, 339 N.C. 616, 454 S.E.2d 259, 340 N.C. 115, 456 S.E.2d 320 (1995).

A defendant must object to the jury charge before the jury retires to consider its verdict in order to preserve for appeal an issue regarding jury instructions. N.C.R. App. P. 10(b)(2). Defendant did not object to the self-defense instruction given by the trial court, and our review is therefore limited to plain error. Our Supreme Court has stated that

[p]lain error includes error that is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done; or grave error that amounts to a denial of a fundamental right of the accused; or error that has resulted in a miscarriage of justice or in the denial to [the] appellant of a fair trial.

*State v. Gregory*, 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996) (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "[I]n order to prevail under the plain error rule, [a] defendant must convince this Court that (1) there was error and (2) without this error, the jury would probably have reached a different verdict." *State v. Najewicz*, 112 N.C. App. 280, 294, 436 S.E.2d 132, 141 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994).

The trial court in this case instructed the jury on the elements of self-defense. The trial court then instructed the jury as follows:

The defendant, members of the jury, would not be guilty of any murder or manslaughter if he, . . . defendant, acted in self-defense as I have just defined that to be, and if he was not the aggressor in bringing on the fight, and did not use excessive force under the circumstances. If the defendant voluntarily and without provocation entered the fight, he would be considered the aggressor, unless he thereafter attempted to abandon the fight and gave notice to the deceased that he was doing so. One enters a fight voluntarily if he uses toward his opponent—uses language which, considering all the circumstances, is calculated and intended to bring on a fight. A defendant uses excessive force if he uses more force than reasonably appeared to him to be necessary at the time of the killing. It is for you, the jury, to determine the reasonableness of the force used by . . . defendant under all the circumstances as they appeared to him at the time.

The defendant is not entitled to the benefit of self-defense if he was the aggressor, with the intent to kill or inflict serious bodily harm upon the deceased. Therefore, in order for you to find . . . defendant guilty of murder in the first or second degree, the State must prove beyond a reasonable doubt, among other things, that . . . defendant was the aggressor with the intent to kill or inflict serious bodily harm upon the deceased. If the State fails to prove either that . . . defendant did not act in self-defense or was the aggressor, with the intent to kill or inflict serious bodily harm, you may not convict . . . defendant of either first or second degree murder, but you may convict . . . defendant of voluntary manslaughter if the State proves that . . . defendant was simply the aggressor, without murderous intent, in bringing on the fight in which the deceased was killed, or that . . . defendant used excessive force.

Defendant argues there was competent evidence in the record tending to show that defendant was not the aggressor. Defendant testified that he returned home on 19 March 2004 and found Walker inside defendant's home selling drugs. Defendant told Walker to stop selling drugs and to leave, but Walker refused. Defendant testified that he got his rifle and Walker left the house. Walker then kicked the door to defendant's home, looked through the windows, and said: "Open the so-and-so door. I ain't leavin[g] nowhere till I get my money back." Defendant testified that he picked up his rifle, went to the door, and told McCoy that "the man's gonna tear my door down. I['ve] got to do something."

When defendant opened the door, Walker had stepped off the porch and was standing next to his car, about seven or eight feet away from defendant. Defendant again told Walker to leave, but Walker came towards defendant, reached for a pole on the porch, and slipped. Defendant testified he shot Walker because he was "scared that [Walker] was fixin[g] to do something to me, fixin[g] to kill me or whatever." Defendant shot Walker again when Walker was stooping over his open trunk about four or five feet away from defendant. Defendant said he shot Walker a second time because he thought Walker might be taking his AK-47 out of the trunk of his car. Defendant testified that he knew that Walker owned an AK-47 and that defendant had seen Walker with the AK-47 about one month prior to 19 March 2004.

Hayes and McCoy testified that Walker threatened defendant in defendant's home by saying, "I'll kick your ass." Hayes and McCoy further testified that Walker verbally provoked, and attempted to scare, defendant. McCoy testified that after defendant shot Walker the first time, Walker said he was "going to get his s—," which McCoy understood to mean that Walker was going to get his gun. Lockett testified that defendant said to Walker, "Oh, you're reaching for your s—, go ahead and reach for your s—." Furthermore, there was testimony regarding the significant age, height and weight disparity between defendant and Walker.

Under these circumstances, the jury could have found that defendant was not the aggressor and was attacked in his home or on his premises. Therefore, the trial court erred by failing to instruct the jury that if it found defendant was not the aggressor, defendant did not have a duty to retreat, but could stand his ground, repel force with force, and increase the amount of force used.

We must also determine whether the instructional error amounted to plain error. We hold that it did. In *State v. Davis*, 177 N.C. App. 98, 627 S.E.2d 474 (2006), the defendant was convicted of second degree murder and discharging a firearm into occupied property. *Id.* at 98, 627 S.E.2d at 475. The State's evidence at trial showed that the defendant fired a gun at the car in which the victim was a passenger only after another passenger in the car shot at the defendant. *Id.* at 103, 627 S.E.2d at 478. The defendant argued the trial court committed plain error by failing to instruct the jury that the defendant had no duty to retreat. *Id.* at 102-03, 627 S.E.2d at 477. Our Court agreed, holding as follows: "Without an instruction that [the] defendant had the right to stand his ground when met with deadly force, the jury

may have believed that [the] defendant acted with malice, requiring it to return a verdict of guilty of second degree murder." *Id.* at 103, 627 S.E.2d at 478. The trial court's failure to give the instruction was plain error entitling the defendant to a new trial. *Id.* at 103, 627 S.E.2d at 478.

Likewise, in the present case, the trial court committed plain error by failing to instruct the jury that if it found defendant was not the aggressor, defendant did not have a duty to retreat, but could stand his ground, repel force with force, and increase the amount of force used. Because the trial court failed to so instruct, "the jury may have believed that defendant acted with malice," requiring it to find defendant guilty of first degree murder. *See Davis*, 177 N.C. App. at 103, 627 S.E.2d at 478. Therefore, for the reasons stated above and for the reasons stated in section I. of this opinion, defendant is entitled to a new trial.

III.

[4] Defendant argues the instruction given by the trial court on the defense of habitation was plainly erroneous. Specifically, defendant contends the trial court committed plain error by: (1) failing to instruct the jury that an occupant within a home has a right to prevent a forcible entry into the home where the occupant reasonably believes the intruder intends to commit a felony in the home; and (2) "improperly narrow[ing] the jury's focus to activities on the porch, rather than the totality of the events that occurred at [defendant's] home." Because defendant failed to object to the defense of habitation instruction given by the trial court, our review is limited to plain error.

N.C. Gen. Stat. § 14-51.1(a) (2005), which sets forth the statutory defense of habitation, provides:

> A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (i) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.

Pattern jury instruction N.C.P.I.—Crim. 308.80 (2005), regarding when a person is justified in using deadly force in defense of his home, states that deadly force is justified when

(1) such force was being used to [prevent a forcible entry] [terminate the intruder's unlawful entry] into the defendant's [home] [place of residence]; and

(2) the defendant reasonably believed that the intruder [may kill or inflict serious bodily harm to the defendant or others in the [home] [place of residence];] [intends to commit a felony in the [home] [place of residence];] and

(3) the defendant reasonably believed that the degree of force he used was necessary to [prevent a forcible entry] [terminate the intruder's unlawful entry] into his [home] [place of residence].

The trial court did not instruct the jury that defendant would have been justified in using deadly force against Walker if defendant reasonably believed that Walker intended to commit a felony in defendant's home. Defendant argues there was competent evidence in the record tending to show that defendant believed Walker intended to commit a felony, being the sale of drugs, in defendant's home. Defendant testified that prior to 19 March 2004, Walker had tried to sell drugs out of defendant's home on three or four occasions, and defendant had told Walker he could not do this. Defendant said Walker came to defendant's home at approximately 8:00 or 8:30 p.m. on 19 March 2004 and defendant told him to leave. Walker left defendant's home to sell drugs next door. Defendant left his home and returned later in the evening to find Walker "sitting in the living room on the couch, with a bunch of dope on [defendant's] table, cutting it up and bagging it up." Hayes also testified that he saw Walker selling drugs in defendant's home on 19 March 2004.

Defendant told Walker he could not sell drugs in defendant's home and told him to leave, but Walker refused. After others convinced Walker to leave, Walker began kicking the door of defendant's home and looking through the windows from the outside. Defendant testified Walker said: "Open the so-and-so door. I ain't leavin[g] nowhere till I get my money back."

Viewed in the light most favorable to defendant, Walker's statement, along with the evidence that Walker sold drugs in defendant's home that evening, tend to show that Walker wanted to reenter defendant's home to get drug money. We conclude this was compe-

tent evidence that defendant had a reasonable belief that Walker intended to enter defendant's home to commit a felony, the sale of drugs. Therefore, the trial court erred by failing to instruct the jury that an occupant of a home may use deadly force to prevent a forcible entry into the home if the occupant reasonably believes the intruder intends to commit a felony in the home. *See* N.C.G.S. § 14-51.1(a); N.C.P.I.—Crim. 308.80.

However, although the trial court erred, defendant has failed to "convince this Court that . . . without this error, the jury would probably have reached a different verdict." *See Najewicz*, 112 N.C. App. at 294, 436 S.E.2d at 141. Therefore, we hold that the error did not amount to plain error. Nevertheless, the trial court should not commit this same instructional error at defendant's new trial. *See State v. Delsanto*, 172 N.C. App. 42, 53, 615 S.E.2d 870, 877 (2005) (holding that although the erroneous admission of the challenged evidence in that case did not have an impact on the jury's finding of guilt, "the admission of the testimony for the purpose of showing [the] defendant's propensity to commit the crime was in error and should not be presented at [the] defendant's new trial for this same purpose.").

Secondly, although the trial court did instruct the jury that under the defense of habitation, a porch may be considered a part of the home under certain circumstances, defendant argues the trial court committed plain error by "improperly narrow[ing] the jury's focus to activities on the porch, rather than the totality of the events that occurred at the home."

Defendant requested that the trial court consider *State v. Blue*, 356 N.C. 79, 565 S.E.2d 133 (2002), in charging the jury on defense of habitation. In *Blue*, the defendant was charged with second degree murder. *Blue*, 356 N.C. at 79, 565 S.E.2d at 134. The undisputed evidence presented at trial showed that the defendant and the victim had struggled on the front porch of the defendant's residence. *Id.* at 81, 565 S.E.2d at 135. It was also undisputed that the victim died of a stab wound and that the knife belonged to the defendant. *Id.* However, there was a dispute as to who struck the first blow and as to where the two were standing at the time. *Id.* The defendant testified that he was inside the screen door to his residence when the victim opened the door, reached inside and hit him. *Id.* A witness for the State testified that the defendant was opening the screen door to his residence when the victim hit him from behind. *Id.* Another witness for the State testified that the defendant struck the first blow on the

porch of the defendant's residence, while a third witness testified the defendant was on the porch steps when the defendant struck the first blow. *Id.*

The trial court instructed the jury on defense of habitation pursuant to N.C.G.S. § 14-51.1. *Id.* During its deliberations, the jury sent a question to the trial court, which read: "Is the front porch considered to be a part of the home or inside of the home?" *Id.* at 83, 565 S.E.2d at 136. The trial court instructed the jury that a front porch is a part of the home, but a front porch is not inside the home. *Id.* The jury found the defendant guilty of voluntary manslaughter, and after appeal by the defendant, our Court found no error. *Id.* at 79, 565 S.E.2d at 134.

On appeal to the Supreme Court, the defendant argued that

the Court of Appeals erred in holding that the trial court did not commit prejudicial error in failing to instruct the jury, in response to its question, that [the] defendant had the same rights pertaining to self-defense and defense of habitation on his front porch as he did within his home since the porch is part of the curtilage from which [the] defendant had no duty to retreat.

*Id.* at 84, 565 S.E.2d at 137. The Supreme Court held that the defense of habitation was applicable to the porch of a dwelling under certain circumstances. *Id.* at 89, 565 S.E.2d at 139. The Court further held that "whether a porch, deck, garage, or other appurtenance attached to a dwelling is within the home or residence for purposes of N.C.G.S. § 14-51.1 is a question of fact best left for the jury's determination based on the evidence presented at trial." *Id.* at 89, 565 S.E.2d at 140. The Supreme Court reversed the decision of our Court and remanded the case for a new trial. *Id.* at 90, 565 S.E.2d at 140.

Pursuant to defendant's request in the present case, the trial court instructed the jury in accordance with *Blue.* The trial court did not foreclose the possibility that the jury could find that defendant acted to prevent Walker from entering defendant's home. Rather, the trial court instructed that the porch could also be a part of the home if the jury so found. Because there was conflicting evidence as to whether defendant was inside his doorway or on his porch at the time of the shooting, this jury instruction was appropriate. The trial court therefore did not "improperly narrow[] the jury's focus to activities on the porch[.]"

## IV.

**[5]** Defendant argues the trial court committed plain error by failing to instruct the jury that defendant had the right to evict trespassers from his property. We disagree. In *State v. McCombs*, 297 N.C. 151, 253 S.E.2d 906 (1979), our Supreme Court recognized that

> when a trespasser invades the premises of another, the latter has the right to remove him, and the law requires that he should first request him to leave, and if he does not do so, he should lay his hands gently upon him, and if he resists, he may use sufficient force to remove him, taking care, however, to use no more force than is necessary to accomplish that object.

*Id.* at 157, 253 S.E.2d at 911. "However, a person may not use deadly force or force likely to cause great bodily harm against a trespasser already in his home." *State v. Clegg*, 142 N.C. App. 35, 47, 542 S.E.2d 269, 277, *disc. review denied*, 353 N.C. 453, 548 S.E.2d 529 (2001). In the present case, whether or not Walker was in defendant's home, defendant, pursuant to *Clegg*, was not permitted to use deadly force in removing Walker from defendant's property. *See Id.* Therefore, the trial court did not err by failing to instruct the jury on the right to evict trespassers. *See Id.* Because we conclude the trial court did not err, "a 'plain error' analysis is inappropriate." *See State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied, Torain v. North Carolina*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986).

## V.

**[6]** Defendant next argues the trial court erred by denying defendant's motion to require the State to disclose the identity of the confidential informant. In his motion, defendant alleged, *inter alia*, that "[t]he informant provided statements allegedly made by . . . [d]efendant in regards to the shooting after the shooting occurred." Defendant further alleged that "[t]he informant also stated that he knew [Walker] carried a .25 caliber pistol sometimes."

In *State v. Newkirk*, 73 N.C. App. 83, 85, 325 S.E.2d 518, 520, *disc. review denied*, 313 N.C. 608, 332 S.E.2d 81 (1985), our Court recognized:

> It is well established that the state is privileged to withhold from a defendant the identity of a confidential informant, with certain exceptions. The test applied, when disclosure of an informant's identity is requested, is set forth in *Roviaro v. United States*, 353 U.S. 53 (1957).

In *Roviaro v. United States*, 353 U.S. 53, 1 L. Ed. 2d 639 (1957), the United States Supreme Court held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61, 1 L. Ed. 2d at 645. The Supreme Court further held that courts must balance the right of an individual to prepare a defense with the public interest in safeguarding the flow of information, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 1 L. Ed. 2d at 646.

> Two factors weighing in favor of disclosure are (1) the informer was an actual participant in the crime compared to a mere informant, and (2) the state's evidence and defendant's evidence contradict on material facts that the informant could clarify[.] Several factors vitiating against disclosure are whether the defendant admits culpability, offers no defense on the merits, or the evidence independent of the informer's testimony establishes the accused's guilt.

*Newkirk*, 73 N.C. App. at 86, 325 S.E.2d at 520-21 (citations omitted).

In *State v. Jackson*, 103 N.C. App. 239, 405 S.E.2d 354 (1991), *aff'd per curiam*, 331 N.C. 113, 413 S.E.2d 798 (1992), the defendant argued the trial court erred by denying his motion to compel the State to disclose the identity of a confidential informant. *Id.* at 241, 405 S.E.2d at 356. Our Court held there were several factors favoring nondisclosure:

> [The] [d]efendant offered no defense on the merits, so there was no contradiction between his evidence and the state's evidence for the informant's testimony to clarify. No testimony by the informant was admitted at trial, rather the testimony of three law enforcement officers established [the] defendant's guilt. In addition, the state asserted disclosure of the informant's identity would jeopardize pending investigations.

*Id.* at 242, 405 S.E.2d at 356. Our Court held the factors favoring nondisclosure outweighed those in favor of disclosure and held the trial court did not err by denying the defendant's motion. *Id.*

In the present case, several factors weigh in favor of nondisclosure. Despite defendant's contention in his brief that the informant was an actual participant in the shooting, defendant did not argue this

before the trial court. Defendant stated in his motion to the trial court that "[t]he informant provided statements allegedly made by . . . [d]efendant in regards to the shooting after the shooting occurred." At the hearing on defendant's motion, the State argued: "The information from this source was all information not gleaned from being on the scene as an eyewitness, but as hearsay of what . . . defendant had told him after this case had happened, while it was being investigated." Defendant did not argue the informant was an actual participant in the shooting. Moreover, no testimony of the informant was offered at trial. In addition, the State argued "that revealing the source of this information would put that person, if not in danger, would certainly have a chilling effect on other people trying to give information to the police."

In his motion, defendant stated "[t]he informant . . . knew . . . [Walker] carried a .25 caliber pistol sometimes." Defendant argues this was relevant to his claim of self-defense. However, although defendant offered the defense of self-defense, and there was a conflict as to whether Walker had a gun on the night of the shooting, defendant was able to offer evidence similar to that provided by the informant. Defendant testified that Walker carried an AK-47 and that defendant might have seen Walker reaching for the AK-47 before defendant shot Walker a second time. McCoy testified that after defendant shot Walker the first time, Walker said he was "going to get his s—," which McCoy understood to mean Walker was going to get his gun. Lockett also testified that defendant said to Walker: "Oh, you're reaching for your s—, go ahead and reach for your s—[,]" which indicated that defendant believed Walker had a gun. For the reasons stated above, we conclude the factors favoring nondisclosure outweigh those favoring disclosure. We hold the trial court did not err by denying defendant's motion and we overrule this assignment of error.

New trial.

Judge ELMORE concurs.

Judge STEELMAN concurs in the result with a separate opinion.

STEELMAN, Judge, concurring in the result.

I fully concur with the analysis of the first portion of the majority opinion which requires that this case be remanded for a new trial based upon the instructional error.

MAGNOLIA MFG. OF N.C., INC. v. ERIE INS. EXCH.

[179 N.C. App. 267 (2006)]

As to part II of the opinion, assuming error on the part of the trial court, it did not rise to the level that would constitute "plain error."

I would further note the danger of this court attempting to advise the trial court on issues that are likely to recur upon re-trial. At the re-trial of this case, the trial court must make its rulings and jury instructions based upon the evidence presented at the new trial, not that presented at the first trial. *Taylor v. Abernethy*, 174 N.C. App. 93, 105, 620 S.E.2d 242, 251 (2005).