STATE OF NORTH CAROLINA v. JEFFERY TREMAINE WILLIAMS

No. COA02-135

(Filed 3 December 2002)

**Homicide— voluntary manslaughter—failure to include possible verdict of not guilty by reason of self-defense**

The trial court erred in a voluntary manslaughter case by failing to include not guilty by reason of self-defense as a possible verdict in its final mandate to the jury and defendant is entitled to a new trial.

Appeal by defendant from judgment entered 12 July 2001 by Judge Knox V. Jenkins, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 16 October 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General David N. Kirkman, for the State.*

*Narron, O'Hale and Whittington, P.A., by John P. O'Hale, for defendant-appellant.*

HUNTER, Judge.

Jeffery Tremaine Williams ("defendant") appeals from a conviction of voluntary manslaughter. We conclude defendant is entitled to a new trial because the trial court failed to include not guilty by reason of self-defense as a possible verdict in its final mandate to the jury.

The evidence presented at trial is briefly summarized as follows: On 2 May 1999, the body of Halton Taylor ("Taylor") was discovered at approximately 4:20 a.m. on Montgomery Heights Road in Johnston County. When Cathy Cockrell, a paramedic, arrived at the crime scene, she observed Taylor lying face down in the road with his arms extended above his head. Taylor had no pulse, was not breathing, and was cold to the touch. A crack pipe was found in Taylor's pocket.

Edward Peele, crime scene technician for the Johnston County Sheriff's office, testified that there was an approximately 500 foot drag trail from the location where Taylor's body was found to a circular shaped area covered in what appeared to be blood, that was referred to as the "possible confrontation area." The "possible con-

frontation area" was located in defendant's yard. On 5 May 1999, Dale Wheeler, Lieutenant over the Major Crimes Division of the Johnston County Sheriff's Office ("Lieutenant Wheeler"), found an orange razor knife with a retractable blade directly across the road from defendant's residence.

Dr. Robert Thompson, a forensic pathologist with the Office of the Chief Medical Examiner in Chapel Hill, performed an autopsy on Taylor's body which revealed that Taylor had ethanol in his system and the alcohol level was ninety milligrams per deciliter (equivalent to .09% on the breathalyzer scale). Cocaine was also found in Taylor's system. Dr. Thompson opined that the cause of Taylor's death was head, chest, and abdominal injuries, which were consistent with injuries sustained by someone who had been kicked.

On 5 May 1999, defendant was interviewed at the Johnston County Sheriff's Office by Greg Tart, a special agent for the State Bureau of Investigation, and Lieutenant Wheeler. Defendant's statement was read into evidence. Defendant revealed that he and his friend Shaun White ("White") had been in an altercation with Taylor in defendant's yard on the morning of 2 May 1999. According to defendant, as he and his friend White were walking home at about 3:00 a.m., they saw Taylor riding his bicycle on Thorne Road. Taylor asked defendant and White for a $20 rock. Defendant and White responded that they did not mess with that "shit." According to defendant, Taylor left his bicycle in the middle of Thorne Road and defendant and White walked away from Taylor while Taylor followed them and continued to ask them for drugs. Defendant heard Taylor clicking a box cutter knife in his pocket. Thereafter, White turned and walked towards his house which was close by, while defendant, followed by Taylor, continued walking toward defendant's home. When defendant and Taylor reached defendant's yard, Taylor got in defendant's face and asked him again for drugs. Taylor pulled the knife from his pocket and an altercation between Taylor and defendant ensued. White came to defendant's aid. Defendant stated that while Taylor was on the ground, he and White each kicked Taylor in the face and ribs about fifteen times. According to defendant, he and White kicked Taylor about ten more times in the head after Taylor dropped the knife. Defendant spotted Taylor's knife on the ground, picked it up, and tossed it across the road. Defendant and White then dragged Taylor, face down on the ground, to Montgomery Heights Road, where they left Taylor, who at the time was still breathing and gasping.

Defendant testified on his own behalf. Defendant stated that he was afraid of Taylor because he knew of specific acts of violence committed by Taylor prior to 2 May 1999, including the following: Taylor shot out the windows of an automobile; Taylor assaulted Carl Sutton, who lived on Montgomery Heights Road; Taylor threw a cement block into Elmo Sheppard's home; Taylor assaulted Kelly Sanders by striking Ms. Sanders in the face with a cooking pot; Taylor broke into Cheryl Raynor's home and attempted to rape Ms. Raynor; Taylor broke into Michael Raynor's house; Taylor cut Donte Markey Atkinson with a razor blade all over his chest and stomach; and Taylor attempted to burn down Benjamin Ethridge's home. In addition, during the trial, several individuals testified that Taylor had a reputation for being a violent person.

Defendant further testified that at the time he was attacked by Taylor, Taylor was acting "[v]ery wild, crazy, [and] violent" and defendant detected an odor of alcohol about Taylor's person. Dr. Nicole Wolfe, a forensic psychiatrist, had reviewed Taylor's autopsy report, the toxicology report prepared in conjunction with the autopsy, and the toxicology report prepared by Professor Brian McMillen of the Department of Pharmacology of East Carolina University School of Medicine before testifying. Dr. Wolfe explained that when alcohol and cocaine are used in combination, they are more potent which makes the effects of both substances last longer. When the euphoria wears off and an individual is coming down from a cocaine high, that individual wants more cocaine. Dr. Wolfe testified that cocaine dependence could make a person "very, very crazy." In Dr. Wolfe's opinion, at the time of his death, Taylor was under the influence of cocaine and alcohol.

Defendant was charged in a true bill of indictment with second degree murder. Defendant was convicted of voluntary manslaughter and was sentenced to thirty-eight to fifty-five months' imprisonment. Defendant appeals from the judgment entered upon the verdict.

Defendant contends the trial court erred in failing to include in its final mandate to the jury a possible verdict of not guilty by reason of self-defense. We agree.

We note that in the case *sub judice*, the trial court discussed the law of perfect self-defense in the body of the charge. However, in its final mandate, the trial court failed to instruct the jury that if they found that defendant acted in self-defense, then the killing would be excusable homicide and it would be their duty to return a verdict of

not guilty. Our Courts have previously held that a trial court's failure to include the possible verdict of not guilty by reason of self-defense in its final mandate to the jury is prejudicial error, entitling the defendant to a new trial. *State v. Dooley*, 285 N.C. 158, 203 S.E.2d 815 (1974); *State v. Kelly*, 56 N.C. App. 442, 289 S.E.2d 120 (1982). In addition, our Supreme Court has stated that "[t]he failure of the trial judge to include not guilty by reason of self-defense as a possible verdict in his final mandate to the jury [is] not cured by the discussion of the law of self-defense in the body of the charge." *Dooley*, 285 N.C. at 165-66, 203 S.E.2d at 820.

The trial judge's final mandate in the case at bar included the following in pertinent part:

> So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally and with malice but not in self-defense, killed the victim with a deadly weapon thereby proximately causing the victim's death, it would be your duty to return a verdict of guilty of second-degree murder. However, if you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty [of] second-degree murder. If you do not find the defendant guilty of second-degree murder, you must consider whether he's guilty of voluntary manslaughter.
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally killed the victim with a deadly weapon and the defendant was the aggressor in bringing on the fight or used excessive force, it would be your duty to find the defendant guilty of voluntary manslaughter even if the State has failed to prove that the defendant did not act in self-defense, or if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally and not in self-defense killed the victim with a deadly weapon but the State has failed to satisfy you beyond a reasonable doubt that the defendant did not act in the heat of passion upon adequate provocation, it would be your duty to return a verdict of guilty of voluntary manslaughter. However, if you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of voluntary manslaughter.

A possible verdict of not guilty by reason of self-defense was not included in the final mandate to the jury. Therefore, we conclude defendant is entitled to a new trial.

The questions raised by defendant's additional assignments of error may not recur during a new trial and hence, will not be considered on this appeal.

New trial.

Judges WYNN and TIMMONS-GOODSON concur.