STATE OF NORTH CAROLINA v. JOSHUA CARLEN MOORE

No. COA08-345

(Filed 6 January 2009)

### 1. Criminal Law— instruction—self-defense—defense of family member

The trial court did not err in a voluntary manslaughter case by denying defendant's request for a jury instruction on self-defense and on the defense of a family member because: (1) the right to kill in defense of another cannot exceed such other's right to kill in his own defense as that other's right reasonably appeared to defendant; and (2) the record included evidence that defendant did not reasonably believe he or his wife were in danger of death or great bodily harm from the decedent at the time of the shooting.

### 2. Appeal and Error; Discovery— motion for access to victim's juvenile records—failure to include in record for appellate review

Although defendant contends the trial court erred in a voluntary manslaughter case by denying his motion and request for access to the victim's juvenile records, this assignment of error is dismissed because: (1) generally an appellate court reviews the motion and request for access to juvenile records of a victim de novo to determine whether they contain information that is favorable or material to defendant's guilt or punishment; and (2) defendant failed to include the juvenile records in his record on appeal, making it impossible for the Court of Appeals to examine whether the evidence was favorable or material.

### 3. Evidence— exclusion of repetitive questioning—trial court's discretion

The trial court' did not err in a voluntary manslaughter case by sustaining the State's objections to repetitive questioning by defense counsel because: (1) the record indicated the inquiries made by defense counsel on direct, redirect, and cross-examination were repetitive since counsel had just asked, and the witness had just answered, the same questions either on direct examination or only moments earlier on cross-examination; and (2) while counsel would have been permitted to ask clarifying questions on redirect or cross-examination, it was within the trial court's discretion to limit such repetitious witness inquiries.

**STATE v. MOORE**

[194 N.C. App. 754 (2009)]

**4. Constitutional Law— effective assistance of counsel—failure to show prejudice**

Defendant was not deprived his right to effective assistance of counsel in a voluntary manslaughter case based on his trial counsel's failure to call a witness to the stand, trial counsel's performance on redirect examination of defendant and another witness, and trial counsel's failure to object and move to strike several statements, because none of these alleged errors were serious enough to have deprived defendant of a fair trial.

Judge ARROWOOD dissenting prior to 31 December 2008.

Appeal by defendant from judgment entered 17 October 2007 by Judge Frank R. Brown in Superior Court, Edgecombe County. Heard in the Court of Appeals 23 September 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.*

*Thomas & Farris, P.A., by Albert S. Thomas, Jr. and Newton Lee & Boyd, by Eldon S. Newton, III, for defendant-appellant.*

WYNN, Judge.

Defendant-Appellant Joshua Carlen Moore appeals a jury conviction for voluntary manslaughter. We find no merit in his arguments on appeal.

At trial, the State presented evidence tending to show that on 8 July 2006, Defendant-Appellant Moore, then sixty-four years old, and his wife Carol Moore worked at their produce stand. The street-side stand consisted of a U-shaped configuration of tables arranged in front of Mr. Moore's cargo truck. A cash box was bolted to a folding table, located behind the truck. Sometime that morning, the decedent, sixteen-year-old Emmanuel Harris, approached the couple's stand. He walked over to the meat container where he indecisively picked up and then put back various packages of meat, ostensibly looking for a particular selection.

Soon thereafter, a struggle between Ms. Moore and Mr. Harris broke out when Mr. Harris attempted to take money out of the cash box. Ms. Wilkins, a customer who was attempting to pay for her salad during this time, testified that the struggle began when Ms. Moore went to the cash box to make change. She stated that Ms. Moore "[l]ifted up the top of the cash box and that's when [Mr. Harris]

reached his arm and they was tussling over the cash box." Further, she testified that she saw Defendant come down from the back of the truck during the struggle with a gun, and that at the time she heard the shot fired by Defendant, she thought Mr. Harris still had his hands on the cash box. Additionally, Mr. Jasper Lindsey, who also was present during the incident, testified that Mr. Harris's hands were on the cash box when Defendant shot Mr. Harris. Defendant admitted to shooting Mr. Harris.

Mr. Harris died as a result of a gunshot wound to the chest. Defendant was indicted, tried, and convicted of the voluntary manslaughter of Mr. Harris and sentenced to a term of not less than 64 months and not more than 86 months. He appeals, arguing (I) the trial court erred by denying his motion and failing to instruct the jury on killing in lawful defense of a family member and self-defense; (II) the trial court erred by denying his motion and request for access to the juvenile records of the victim; (III) the trial court erred by improperly limiting his examination of witnesses; and (IV) he was deprived of his right to effective assistance of counsel.

I.

[1] Defendant argues that the trial court erred in denying his request for a jury instruction on self-defense and on the defense of a family member. "[B]efore the defendant is entitled to an instruction on self-defense, two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable?" *State v. Bush*, 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982). Further, "in exercising the right of self-defense one can use no more force than was or reasonably appeared necessary under the circumstances to protect himself from death or great bodily harm." *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971).

This Court's review of Defendant's request for instruction on the defense of a family member is similar. "[T]he right to kill in defense of another cannot exceed such other's right to kill in his own defense as that other's right reasonably appeared to the defendant." *State v. Perry*, 338 N.C. 457, 466, 450 S.E.2d 471, 476 (1994) (internal quotation marks and citation omitted). This Court has stated, "Where there is no evidence from which the jury could find that the defendant reasonably believed a third person was in immediate peril of death or serious bodily harm at the hands of another, it would be improper for

the Court to instruct on defendant's defense of a third person as justification for the assault." *State v. Moses*, 17 N.C. App. 115, 116, 193 S.E.2d 288, 289 (1972). Thus, the question before the Court is whether there was evidence, taken in the light most favorable to the Defendant, that Defendant formed a reasonable belief that it was necessary to kill Mr. Harris to protect either himself or his wife from death or great bodily harm.

We find no error in the trial court's decision to deny Defendant's request for instructions on self-defense and defense of another. The record on appeal and transcript show insufficient evidence to support the conclusion that Defendant believed his or his wife's life was in danger, and no evidence to suggest that this belief, even if formed, was reasonable. Prior to being shot by Defendant, Mr. Harris had made no attempt to harm Defendant or his wife in any way. In fact, according to both Defendant and Ms. Moore, Mr. Harris never threatened them. Ms. Moore testified that, even during their struggle, Mr. Harris never threatened her physically, and his only contact with her was to push her hand and arm away from the cash box. Further, she testified that she had no reason to believe Mr. Harris was interested in anything other than the cash box. Ms. Moore stated, "No, he didn't threaten me. He was only trying to get the cash box."

Accordingly, we find that the trial court committed no error in denying Defendant's requests for instruction on self-defense or defense of another because the record includes evidence that Defendant did not reasonably believe he or his wife was in danger of death or great bodily harm from the decedent at the time of the shooting.

II.

[2] Defendant next argues that the trial court erred by denying his motion and request for access to the victim's juvenile records. Generally, an appellate court reviews the motion and request for access to juvenile records of a victim *de novo* by examining the sealed records to determine whether they contain information that is "favorable" or "material" to defendant's guilt or punishment. *See State v. Taylor*, 178 N.C. App. 395, 408, 632 S.E.2d 218, 227 (2006). However, in this case, Defendant failed to include the juvenile records in his record on appeal, making it impossible for this Court to examine whether or not the evidence was favorable or material. Accordingly, we decline to address this assignment of error.

### III.

**[3]** Defendant next argues that the trial court erred by sustaining the State's objections to repetitive questioning by defense counsel. First, Defendant argues that the trial court erred by limiting counsel's redirect examination of Defendant on how he "felt" when he saw Mr. Harris coming back toward the produce stand, the same inquiry the trial court disallowed as repetitive on direct examination. Next, Defendant argues that the trial court erred by cutting off defense counsel's cross-examination of Ms. Wilkins, after counsel asked Ms. Wilkins, for a third time, if she had grabbed her daughter and fled from the produce stand when Mr. Harris first approached Ms. Moore. Last, Defendant argues the trial court erred by sustaining the State's objection to defense counsel's redirect examination of Ms. Moore, despite having questioned Ms. Moore extensively on the same issue during direct examination.

Generally, the trial court has a duty to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" in order to "avoid needless consumption of time." N.C. Gen. Stat. § 8C-1, Rule 611(a) (2007). In keeping with this principle, trial judges may properly sustain objections to witness examination where they find an inquiry to be repetitious or unnecessary. *State v. Jetton*, 1 N.C. App. 567, 568, 162 S.E.2d 102, 104 (1968) (concluding that because the witness had answered questions on the same issue previously, the defendant was not prejudiced by not being allowed to have the witness repeat his testimony). Similarly, the record in this case indicates that the inquiries made by defense counsel on direct, redirect, and cross-examination were repetitive, since counsel had just asked, and the witnesses had just answered, the same questions either on direct examination or only moments earlier on cross-examination. While counsel would have been permitted to ask clarifying questions on redirect or cross-examination, it was well within the trial judge's discretion to limit such repetitious witness inquiries. Therefore, we find no error.

### IV.

**[4]** Finally, Defendant argues that he was deprived of his right to effective assistance of counsel. This Court reviews a criminal defendant's claim of ineffective assistance of counsel by considering (1) whether counsel's performance was "deficient" and (2) whether the performance deficiency was " 'so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*' " *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v.*

*Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Braswell,* 312 N.C. at 563, 324 S.E.2d at 249. Further, the U.S. Supreme Court has noted, "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 80 L. Ed. 2d at 695.

Here, Defendant presents three major arguments for trial counsel's deficient performance; however, none of these arguments depict errors serious enough to have deprived Defendant of a fair trial. First, Defendant cites counsel's failure to call Roy Wooten to the stand. Defendant contends that Mr. Wooten would have provided important evidence regarding Defendant's state of mind at the time of the shooting. While the record reflects that the witness was present and prepared to testify, and that he told Ms. Moore on the morning of the shooting that her produce stand was going to be robbed, trial counsel decided to not call him as a witness. However, the decision not to call a witness is the very type of trial tactic that warrants great deference on appeal. Our state Supreme Court has held, "[T]he decisions on what witnesses to call . . . and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client. Trial counsel are necessarily given wide latitude in these matters." *State v. Milano,* 297 N.C. 485, 495, 256 S.E.2d 154, 160 (1979) (citations and quotation marks omitted), *overruled on other grounds by State v. Grier,* 307 N.C. 628, 300 S.E.2d 351 (1983).

There are a number of reasons Defendant's trial counsel may have chosen to not have Mr. Wooten testify. The record shows that the State had filed a motion to exclude Mr. Wooten's testimony as inadmissible hearsay. Further, there is no evidence to suggest that Mr. Wooten's testimony, if admitted, would have lead to a different jury verdict. It is unclear that Defendant had knowledge of Mr. Wooten's statement at the time of the shooting or that the testimony would have favorably influenced the trial court's ruling on the instruction of self-defense. In light of the strong deference given to trial counsel's strategic decisions, Defendant fails to establish that trial counsel's performance was deficient.

Next, Defendant argues that trial counsel's performance on redirect examination of Defendant and Ms. Moore was deficient.

Defendant contends that trial counsel failed to properly clarify statements by both witnesses that Mr. Harris had not verbally "threatened" Mr. or Ms. Moore at any point during the incident. Defendant provides no evidence to suggest that this was the true objective for counsel's redirect or that Defendant suffered any prejudice as a result. Throughout the course of the trial, the jury heard testimony of alleged physical threats by Mr. Harris, including the altercation between Ms. Moore and Mr. Harris and Ms. Moore's testimony that she was "frightened" by Mr. Harris. This testimony suggests that the court already had heard evidence that Ms. Moore and Defendant perceived Mr. Harris to be a physical threat. Given the existence of such evidence elsewhere in the record, there is a reasonable probability that trial counsel's "error" had a minimal effect on the trial judge's decision to not allow a jury instruction on self-defense and defense of another, and no effect on the jury's final decision.

Lastly, Defendant cites as error trial counsel's failure to object to and move to strike: (1) Ms. Telexio Parker's statement that Mr. Harris was right-handed; (2) the State's description of the area where the event occurred as "a crime scene"; (3) Frederick Harrison's reaction to the shooting; and (4) the State's statement during closing arguments that Mr. Harris's most serious offense was possible attempted misdemeanor larceny. There is no evidence to suggest that there is a reasonable probability that, in the absence of counsel's errors, a different result would have been reached by the jury even if trial counsel had properly objected.

First, Ms. Parker's statement regarding Mr. Harris's dominant hand was rendered irrelevant by the trial judge's decision to not instruct the jury on self-defense or defense of another. Second, the State's reference to the area surrounding the produce stand as a "crime scene" came after two officers had already referred to the area as a crime scene in their testimony and pictures of the scene, which included visible "crime scene" tape, were introduced into evidence. Third, Defendant contends that the "emotional monologue" offered by Mr. Harrison was irrelevant and prejudicial. However, there is no evidence to suggest that admitting these statements prejudiced Defendant or that the trial court would not have allowed the testimony even if counsel had objected. The witness's testimony is arguably relevant to explain why Mr. Harrison left the scene without first giving his statement to the police. Fourth, Defendant cites counsel's failure to object to the State's statement during closing that Mr. Harris's "most serious" offense would have been attempted misde-

meanor larceny, rather than attempted common law robbery as Defendant argues.

Historically, our state courts have given counsel broad allowance in making their argument to the jury. *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976) (holding that counsel must be allowed wide latitude in jury arguments). Further, there is no evidence to suggest that the lack of objection by counsel prejudiced Defendant. It is highly improbable that the jury, as Defendant argues, would have known the difference between the two crimes, principally that attempted common law robbery is a felony, or that this distinction would have lead the jury to reach a different decision. If anything, the State's admission that Mr. Harris was likely committing a crime at the time of the shooting favors Defendant.

In summary, we find each of Defendant's assignments of error with regard to ineffective assistance of counsel to be without merit.

No error.

Judge BRYANT concurs.

Judge ARROWOOD dissents in a separate opinion prior to 31 December 2008.

ARROWOOD, Judge dissenting.

I respectfully dissent.

In determining whether to instruct on a defense the trial court must consider the evidence in the light most favorable to the defendant. *State v. Withers*, 179 N.C. App. 249, 257, 633 S.E.2d 863, 868 (2006). Failure to include an instruction on self-defense or defense of a family member where there is sufficient evidence to warrant such an instruction is prejudicial error. *See State v. Williams*, 154 N.C. App. 496, 571 S.E.2d 886 (2002).

In the light most favorable to the Defendant the evidence showed the following: Emmanual Harris (the deceased) who was approximately six feet tall and weighed approximately one hundred and eighty (180) pounds approached a produce stand operated by Joshua Moore (Defendant), his wife (Mrs. Moore), and grandson. After acting suspiciously for some amount of time, Harris pretended to want to make a purchase. When Mrs. Moore attempted to make change,

Harris tried to grab the cash box she was opening. The cash box was bolted to the produce table. A struggle ensued and Harris struck at Mrs. Moore. As the struggle continued Mrs. Moore became more fearful and testified she was "scared to death". She yelled for the Defendant who was in the back of the produce truck. He saw Harris "tussling" with his wife and Defendant ordered Harris to back off. Harris initially backed off, but then placed his hand in the left pocket of his baggy pants. Defendant then reached for a gun that was in the back of the truck. Harris began to advance toward Defendant and his wife moving his hand in his pocket. When Harris' hand reached the top of the pocket, Defendant fired one shot which killed Harris. Defendant further testified that at the time he feared for the safety of his wife, his grandson and himself.

"A defendant is entitled to an instruction on self-defense if there is any evidence in the record which establishes that it was necessary or that it reasonably appeared to the defendant to be necessary to kill in order to protect himself from death or great bodily harm. When defendant's evidence is sufficient to support an instruction on self-defense, the instruction must be given even though the State's evidence is contradictory." *State v. Hughes*, 82 N.C. App. 724, 727, 348 S.E.2d 147, 150 (1986) (internal citations omitted). Self-defense includes the right to defend another in a family relationship with the defendant. *See State v. Carter* 254 N.C. 475, 119 S.E.2d 461 (1961).

Taking the evidence in the light most favorable to the Defendant, I believe it is sufficient to require the trial court to instruct on self-defense and defense of other. Therefore, I dissent and vote to remand the case for a new trial.