STATE OF NORTH CAROLINA v. MALCOLM FITZGERALD TYSON, SR.

No. COA07-1376

(Filed 17 February 2009)

**1. Rape— statutory rape—consciousness of defendant—sufficiency of evidence**

The evidence was sufficient to support a finding by the jury that defendant was conscious when he twice had sexual intercourse with the alleged minor victim and she became pregnant so as to support his conviction on two counts of statutory rape, even though defendant claimed and the minor victim testified that she had drugged defendant and he had passed out when she had sex with him on two occasions, where (1) the State had the burden of proving beyond a reasonable doubt that defendant was indeed conscious when he committed the alleged acts since evidence of his unconsciousness arose out of the State's own evidence; (2) the minor victim changed her story after previously stating that she had impregnated herself by drugging defendant, collecting his sperm, and placing it within herself with a syringe; (3) defendant had written sexually suggestive letters to the minor victim; and (4) defendant told an officer that he would need to think of something else to say when the officer did not believe his story about how the minor victim had become pregnant.

**2. Rape— statutory rape—instruction—voluntary act—omitting not guilty by reason of unconsciousness—plain error**

The trial court committed plain error by failing to incorporate the element of a voluntary act into the statutory rape instruction and by omitting "not guilty by reason of unconsciousness" in its final mandate to the jury, and defendant is entitled to a new trial, because: (1) given the jury's seemingly inconsistent verdicts finding defendant not guilty of indecent liberties (which has a statutory element of willfulness) but guilty of statutory rape, there was a reasonable likelihood that the jury applied the instructions on unconsciousness in a manner that impermissibly lessened the State's burden of proof to show defendant's consciousness; and (2) even assuming arguendo that the trial court's failure to properly instruct the jury on the State's burden to prove defendant's consciousness beyond a reasonable doubt did not rise to the level of plain error, the trial court committed plain error by failing to include in the final mandate the possible verdict of "not guilty by

reason of unconsciousness" since the jury could have assumed that a verdict of not guilty of statutory rape by reason of unconsciousness was not a permissible verdict.

Judge HUNTER, Robert C. concurring in part and dissenting in part.

Appeal by Defendant from judgments entered 25 May 2007 by Judge Clifton W. Everett, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 16 April 2008.

*Attorney General Roy Cooper, by Assistant Attorney General David Gordon, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for Defendant.*

STEPHENS, Judge.

On 16 October 2006, the Grand Jury of Pitt County returned bills of indictment charging Defendant Malcolm Tyson, Sr. with two counts of taking indecent liberties with a child and two counts of statutory rape. The case came on for trial at the 23 May 2007 Criminal Session of Pitt County Superior Court. Defendant offered no evidence and moved to dismiss the charges for insufficient evidence. The trial court denied his motion. On 25 May 2007, the jury acquitted Defendant of the indecent liberties charges and returned guilty verdicts on the statutory rape charges. On that date, the trial court sentenced Defendant to two consecutive prison terms of 307 to 378 months. From these judgments and commitments, Defendant appeals.

I. Facts

Beginning in July 2004, Defendant Malcolm Tyson, Sr. lived in Greenville, North Carolina, with his wife and their children, and his girlfriend, Alicia Kornegay, and her children, N.B. and N.B.'s sister and half-brother. N.B., the alleged victim in this case, was born in December 1989. N.B. gave birth to children on 29 April 2005 and 25 June 2006. Pitt County Sheriff's Investigator Paula Dance was notified of the birth of the second child and commenced an investigation. On 27 June 2006, DNA samples were consensually obtained from N.B., her children, and Defendant.

Dance executed a search warrant of Defendant's residence on 28 June 2006 where she seized letters written by Defendant to N.B. Also

on that date, Dance interviewed N.B. N.B. denied having had sex with Defendant and denied that he had fathered either of her children. N.B. said that she thought Defendant's son, Malcolm Tyson, Jr. could have fathered one of her children and that one of several boys in Ayden might have fathered the other. Dance asked N.B. about the recurring phrase in Defendant's letters to her, "[c]an I get in them drawers[.]" N.B. explained that the phrase was a song lyric and that Defendant said that to everyone.

Dance questioned Ms. Kornegay on 29 June 2006. Dance showed her the letters and asked Ms. Kornegay if she was concerned about the phrase, "[c]an I get in them drawers[.]" Ms. Kornegay said she knew people would take that the wrong way, but it was only a song and Defendant said that to everyone. Ms. Kornegay told Dance that N.B. was infatuated with Defendant. She said that she and Defendant had told N.B. that she could not be in love with him in that way, but that afterwards, N.B. told her mother that she had given Defendant a pill when he had come home drunk and had been "with him." N.B. said that she had had sex with Defendant and that he did not remember it. Ms. Kornegay said that N.B. had always been a problem child, had trouble in school, and that she and her friends gave pills to boys and had sex with them. Ms. Kornegay told Dance that she felt the situation was all N.B.'s fault.

Detective Dance spoke with N.B. again on 10 July 2006. This time, N.B. told Dance that she had given Defendant pills to knock him out and then had collected Defendant's semen in a shot cup and put the semen inside herself with a syringe.

On 16 August 2006, Defendant was arrested on statutory rape warrants and taken to Pitt County Detention Center, where he remained until his case came on for trial.

## II. Motion to Dismiss

[1] Defendant argues that the trial court erred in denying his motion to dismiss the statutory rape charges as there was insufficient evidence to show that Defendant was conscious during the alleged sexual acts and, therefore, that he committed voluntary acts.

When a defendant moves to dismiss based on insufficiency of the evidence, the trial court must determine whether there is substantial evidence (1) of each element of the crime charged and (2) that the defendant is the perpetrator. *State v. Scott*, 356 N.C. 591, 573 S.E.2d 866 (2002). "Substantial evidence is evidence from which any rational

trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. Alston,* 131 N.C. App. 514, 518, 508 S.E.2d 315, 318 (1998) (quotation marks and citation omitted). "The evidence must be viewed in the light most favorable to the State, and the State must receive every reasonable inference to be drawn from the evidence." *State v. King,* 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996). "Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *Id.* If the evidence, when considered in light of the foregoing principles, is sufficient only to raise a suspicion, even though the suspicion may be strong, as to either the commission of the crime or that the defendant on trial committed it, the motion to dismiss must be allowed. *Scott,* 356 N.C. 591, 573 S.E.2d 866. A trial court's denial of a motion to dismiss for insufficient evidence is a question of law, reviewed *de novo* upon appeal. *State v. Bagley,* 183 N.C. App. 514, 644 S.E.2d 615 (2007).

A defendant is guilty of statutory rape if "the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person." N.C. Gen. Stat. § 14-27.7A(a) (2007). Although "[c]riminal *mens rea* is not an element of statutory rape[,]" *State v. Ainsworth,* 109 N.C. App. 136, 145, 426 S.E.2d 410, 416 (1993), "where a person commits an act without being conscious thereof, the act is not a criminal act even though it would be a crime if it had been committed by a person who was conscious." *State v. Jerrett,* 309 N.C. 239, 264, 307 S.E.2d 339, 353 (1983) (citing *State v. Boone,* 307 N.C. 198, 297 S.E.2d 585 (1982), *overruled on other grounds by State v. Richmond,* 347 N.C. 412, 495 S.E.2d 677 (1998); *State v. Caddell,* 287 N.C. 266, 215 S.E.2d 348 (1975); *State v. Mercer,* 275 N.C. 108, 165 S.E.2d 328 (1969), *overruled on other grounds by Caddell,* 287 N.C. 266, 215 S.E.2d 348). Thus, "under the law of this State, unconsciousness . . . is a complete defense to a criminal charge," *Caddell,* 287 N.C. at 290, 215 S.E.2d at 363, because unconsciousness "not only excludes the existence of any specific mental state, but also excludes the *possibility of a voluntary act* without which there can be no criminal liability." *Id.* at 295, 215 S.E.2d at 366.

The ultimate burden rests on the State to prove every element essential to the crime charged beyond a reasonable doubt. "[N]ormally the presumption of mental capacity is sufficient to prove that [a defendant] acted consciously and voluntarily and the prosecu-

tion need go no further." *Id.* at 298-99, 215 S.E.2d at 368. However, this presumption may be rebutted by sufficient evidence to the contrary. If the defendant wishes to overcome the presumption of consciousness, the burden rests upon the defendant to establish this defense by a preponderance of the evidence. *Jerrett*, 309 N.C. 239, 307 S.E.2d 339; *Caddell*, 287 N.C. 266, 215 S.E.2d 348. If, however, the evidence of unconsciousness "arises out of the State's own evidence," the burden rests on the State to prove the defendant's consciousness beyond a reasonable doubt. *Caddell*, 287 N.C. at 290, 215 S.E.2d at 363.

In most North Carolina cases dealing with the defense of unconsciousness, the defendant has been the party offering evidence of his or her unconsciousness, and the issue before the appellate court has been whether the defendant submitted sufficient evidence to warrant a jury instruction on unconsciousness. Here, however, Defendant presented no evidence and the evidence of Defendant's unconsciousness arose out of the State's own evidence. Thus, the State had the burden of proving beyond a reasonable doubt that Defendant was indeed conscious when he committed the alleged acts.[1] The State may meet its burden of proof by either direct or circumstantial evidence. *State v. Salters*, 137 N.C. App. 553, 528 S.E.2d 386 (2000). Accordingly, the question before us is whether there is sufficient evidence from which the jury could find beyond a reasonable doubt that Defendant was conscious, and therefore committed voluntary acts, when he had sexual intercourse with N.B. We conclude there is.

The State's evidence tends to show the following: on direct examination by the State, N.B. testified that she had given Defendant pills and then waited until it looked like he was passed out. She then "unzipped his pants[,] pulled his privacy [sic] out and started jacking him off." She acknowledged that his penis became erect while she was doing this, and that "after that a little cum came out. . . . I got on top of him." N.B. further testified on direct examination that during intercourse, Defendant did not respond to her, did not say anything to her, did not move, and did not open his eyes.

N.B. then admitted that the first time she was interviewed by Detective Dance, she told Dance that she had not had sex with Defendant. She also admitted that the second time she spoke with

---

1. In its closing argument, the State argued that the four elements of statutory rape listed in the North Carolina General Statutes "are the four things and only four things the State has to prove to you beyond a reasonable doubt." This is a misleading misstatement of the law.

Dance, she told her "part true and part story" in that she said she had given Defendant a pill, but that, instead of saying she had gotten on top of Defendant, she told Dance she had collected Defendant's semen in a shot cup and then put the semen inside herself with a syringe. N.B. testified, "I just lied because I didn't want to be in trouble" and said that she told a different story on the stand because "I don't want to go to jail for telling a lie."

Alicia Kornegay testified that N.B. told her "she took and gave [Defendant] a pill, and he was out and she took and said she unzipped his pants and she played with him and she got a little cup and she had a syringe and she placed it in herself. That's what she told me." Ms. Kornegay testified that the only thing she knew about N.B. having intercourse with Defendant was what N.B. told her and that when she asked Defendant about it, he said that he had no idea about any of it.

Detective Dance testified that she first interviewed N.B. on or about 28 June 2006. During that interview, N.B. denied ever having sex with Defendant. Detective Dance interviewed N.B. again on 10 July 2006. Detective Dance testified that during that interview, N.B. stated that she got pills that could "lay a person out." N.B. stated that she put two pills in Defendant's drink after he had "come home, tired from drinking and smoking drugs." She said that "when she gave it to him[,] he couldn't move or anything." N.B. stated to her that he was "dead-weight" and that she couldn't lift him to get his pants off so she unzipped his pants and pulled his "private" out. She told Dance that she started "messing" with him and then used a shot cup and a syringe to collect his semen and put it into herself. She told Dance that "the next day he acted like he didn't remember anything" and that he "only said that his head was hurting." She told Dance that she had done this two different times.

Dance further testified that on 29 June 2006, she interviewed Ms. Kornegay. She testified that Ms. Kornegay told her N.B. had told Ms. Kornegay that she had given Defendant a pill and that after giving him the pill, N.B. had sex with Defendant. Ms. Kornegay said N.B. told her she was the one that did it to him and that he did not remember doing things with her.

Neil Elks, a captain of the patrol division of the Pitt County Sheriff's Department, testified to a conversation he had with Defendant at the Detention Center on or about 16 August 2006. Elks testified that Defendant told him "his wife's daughter had got him

drunk, he had passed out, and then she got him off and she used a turkey baster to put his stuff inside of her and she got pregnant." Elks further testified that he told Defendant he was going to have to come up with a better story than that, and that Defendant had responded, "[y]ou don't think anyone will believe that?" Defendant then said, "[o]kay. I need to think of something else to say."

Shawn Weiss, an expert in the field of DNA analysis, testified that, based on DNA tests done on N.B., her two children, and Defendant, the probability that Defendant was the father of N.B.'s two children was 99.99 percent.

After being arrested on the current charges and while in jail awaiting trial, Defendant sent N.B. two drawings, one depicting a male, a female, and a baby and another depicting a male, a female, a baby standing, and a baby being held. Defendant had also written letters to N.B. Excerpts from these letters stated:

"So what's the deal, Baby? Can I get in them drawers."

. . . .

"Quit smiling saying to yourself right now. Yes, you can."

"P.S. What's the deal, Shorty, can I get in them drawers?"

"P.S. Quit smiling."

. . . .

"Big Daddy 4-life."

. . . .

"The only way to ensure that this cycle be broken is to live for the Lord, but I can't even do that because of things I don't regret but maybe should have done differently. . . ."

. . . .

"I hate you have to go back through that kind of pain, but this time I'll be at the hospital with you. Okay."

. . . .

"Good night my darling one. I love you more than you can ever know."

. . . .

"Age Ain't Nothing But a Number[.]"

Another letter from Defendant to N.B. stated, in pertinent part:

"You always act like you're so into me, can't live without me. As soon as you're out of my sight you don't give a damn about me. I don't even matter then."

. . . .

"You only, you're only crazy about me when you're around me, but the minute you're gone, who the hell is Malcolm? Some part of [N.B.] will never change, and you and I both know what parts they are, don't we?"

We conclude that Defendant's statements in his letters to N.B. and Defendant's statement to Elks that he would "need to think of something else to say" when Elks did not believe Defendant's story about how N.B. became pregnant, taken together with the manifest inconsistencies in N.B.'s testimony, provide adequate circumstantial evidence from which a jury could find beyond a reasonable doubt that Defendant was conscious during the two acts of sexual intercourse with N.B. that resulted in the birth of their two children. Defendant's argument is thus overruled.

## III. Jury Instructions

[2] Defendant also contends the trial court committed plain error by failing to incorporate the element of a voluntary act into the instruction on statutory rape and by omitting "not guilty by reason of unconsciousness" in its final mandate to the jury. Defendant argues that the trial court's charge lessened the State's burden of proof to show Defendant's consciousness beyond a reasonable doubt.

[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378-79 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted)). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 378.

A trial court's jury instruction "is for the guidance of the jury," *Sugg v. Baker*, 258 N.C. 333, 335, 128 S.E.2d 595, 597 (1962), and its purpose "is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict." *State v. Williams*, 280 N.C. 132, 136, 184 S.E.2d 875, 877 (1971). It is recognized by this Court that "the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." *In re Will of Leonard*, 71 N.C. App. 714, 717, 323 S.E.2d 377, 379 (1984).

"In a criminal trial the judge has the duty to instruct the jury on the law arising from all the evidence presented." *State v. Moore*, 75 N.C. App. 543, 546, 331 S.E.2d 251, 253, *disc. review denied*, 315 N.C. 188, 337 S.E.2d 862 (1985). This places a duty upon the presiding judge to instruct the jury as to the burden of proof upon each issue arising upon the pleadings. *See State v. Redman*, 217 N.C. 483, 8 S.E.2d 623 (1940) (holding that the failure to properly instruct the jury on the burden of proof required a new trial). "The rule as to the burden of proof is important and indispensable in the administration of justice, and constitutes a substantial right of the party upon whose adversary the burden rests. It should, therefore, be jealously guarded and rigidly enforced by the courts." *State v. Falkner*, 182 N.C. 793, 798, 108 S.E. 756, 758 (1921) (quotation marks and citations omitted).

Pursuant to N.C. Gen. Stat. § 14-27.7A(a), a defendant is guilty of statutory rape "if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person." N.C. Gen. Stat. § 14-27.7A(a). However, "under the law of this State, unconsciousness . . . is a complete defense to a criminal charge, . . . it is an affirmative defense; and [] the burden rests upon the defendant to establish this defense, unless it arises out of the State's own evidence[.]" *Caddell*, 287 N.C. at 290, 215 S.E.2d at 363.

The trial court gave the following instruction regarding statutory rape:

> For you to find defendant guilty of statutory rape of a victim who was 14 and 15 years old, the State must prove four things beyond a reasonable doubt:
>
> First, that the defendant engaged in vaginal intercourse with the victim. Vaginal intercourse is penetration, however slight, . . . of the female sex organ by the male sex organ. The actual emission of semen is not necessary.
>
> Second, that at the time of the act the victim was in this case in one count alleged to be 14, and in the other count alleged to be 15. Years old [sic].
>
> Third, that at the time of the act the defendant was at least six years older than the victim.
>
> And fourth, that at the time of the act the defendant was not lawfully married to the victim.

This instruction adequately encompasses the law of statutory rape and tracks the language of the pattern jury instruction set forth in N.C.P.I.—Crim. 207.15.2 (March 2002).

Prior to this instruction, the trial court instructed the jury on unconsciousness as follows:

> [Y]ou may find there's evidence which tends to show that the defendant was physically unable to control his physical actions because of unconsciousness. That is a state of mind in which a person, though capable of action, is not conscious of what he is doing at the time the crime was alleged to have been committed.
>
> In this case one element is that the act charged be done voluntarily. Therefore, unless you find from the evidence beyond a reasonable doubt that at the time the defendant was able to exercise conscious control of his physical actions he would not be guilty of a crime.
>
> If the defendant was unable to act voluntarily, he would not be guilty of any offense. *The burden of persuasion rests on the defendant to establish this defense to the satisfaction of the jury, unless it arises out of the State's own evidence, in which case the burden is on the State to prove beyond a reasonable*

*doubt that the defendant was able to exercise conscious control of his physical action.*

(Emphasis added.)

Although this jury instruction adequately encompasses the law of unconsciousness and tracks the language of the pattern jury instruction set forth in N.C.P.I.—Crim. 302.10 (May 2003), the emphasized portion fails to clearly charge the jury as to who had the burden of proof, and what that burden was, to show Defendant's consciousness in this case. The instruction, as given, only explained where the burden of proof *could* lie, depending on the nature of the evidence, and did not explain that *in this case*, since the evidence of Defendant's unconsciousness arose out of the State's own evidence, the State had the burden of proving Defendant's consciousness beyond a reasonable doubt. Moreover, since Defendant offered no evidence, it was unnecessary to charge the jury that "[t]he burden of persuasion rests on the defendant to establish [unconsciousness] to the satisfaction of the jury[.]" We are of the opinion that including this statement in the charge compounded the confusion of the charge, particularly given the trial court's failure to clearly charge that, under the circumstances of this case, the State had the burden of proof beyond a reasonable doubt, and not simply to the jury's satisfaction, to establish Defendant's consciousness.

Given the jury's seemingly inconsistent verdicts, finding Defendant not guilty of indecent liberties, which has a statutory element of willfulness, but guilty of statutory rape, there is a reasonable likelihood that the jury applied the instructions on unconsciousness in a manner that impermissibly lessened the State's burden of proof to show Defendant's consciousness. The trial court's failure to properly instruct the jury on the burden of proof constitutes plain error in this case and warrants a new trial.

Even assuming *arguendo* that the trial court's failure to properly instruct the jury on the State's burden to prove Defendant's consciousness beyond a reasonable doubt did not rise to the level of plain error, we conclude that the trial court committed plain error by failing to include in the final mandate the possible verdict of "not guilty by reason of unconsciousness."

Every criminal jury must be "instructed as to its right to return, and the conditions upon which it should render, a verdict of not guilty." *State v. Howell*, 218 N.C. 280, 282, 10 S.E.2d 815, 817 (1940). "Such instruction is generally given during the final mandate after the

trial court has instructed the jury as to elements it must find to reach a guilty verdict." *State v. Chapman,* 359 N.C. 328, 380, 611 S.E.2d 794, 831 (2005) (citing *State v. Ward,* 300 N.C. 150, 156-57, 266 S.E.2d 581, 585-86 (1980)).

In *State v. Dooley,* 285 N.C. 158, 203 S.E.2d 815 (1974), the trial court did not include "not guilty by reason of self-defense" as a possible verdict in its final mandate to the jury on the charge of manslaughter. In holding that the trial court's failure to include such an instruction in its final mandate constituted prejudicial error, entitling defendant to a new trial, the North Carolina Supreme Court reasoned,

> [t]he failure of the trial judge to include not guilty by reason of self-defense as a possible verdict in his final mandate to the jury was not cured by the discussion of the law of self-defense in the body of the charge. By failing to so charge, the jury could have assumed that a verdict of not guilty by reason of self-defense was not a permissible verdict in the case.

*Id.* at 165-66, 203 S.E.2d at 820. *Accord State v. Withers,* 179 N.C. App. 249, 633 S.E.2d 863 (2006); *State v. Ledford,* 171 N.C. App. 144, 613 S.E.2d 726 (2005); *State v. Williams,* 154 N.C. App. 496, 571 S.E.2d 886 (2002); *State v. Kelly,* 56 N.C. App. 442, 289 S.E.2d 120 (1982).

In this case, in its final mandate on the charge of statutory rape, the trial court instructed:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant engaged in vaginal inter-course with the victim, when the victim was·. . . alleged to be 14 in one case, alleged to be 15 years old in the other case, and that the defendant was at least six years older than the victim, and was not lawfully married to the victim, it would be your duty to return a verdict of guilty of statutory rape.

> If you do not so find or have a reasonable doubt as to one or more of these things it would be your duty to return a verdict of not guilty.

While the trial court correctly instructed that the jury should find Defendant "not guilty" if it had a reasonable doubt as to any of the elements of statutory rape, the trial court failed to include in its final mandate that the jury should find Defendant "not guilty" if it had a reasonable doubt as to Defendant's consciousness. As in *Dooley*

where, even if the State proved all the statutory elements of murder, the defendant would be not guilty if his actions were justified by self-defense, in this case, even if the State proved all the statutory elements of statutory rape, Defendant would be not guilty if his actions were blameless due to his unconsciousness. Thus, as in *Dooley*, the omission of "not guilty by reason of unconsciousness" was not cured by the discussion of the law of unconsciousness in the body of the charge. By failing to so charge, the jury could have assumed that a verdict of not guilty of statutory rape by reason of unconsciousness was not a permissible verdict in the case. The trial court's failure to include "not guilty by reason of unconsciousness" in the final mandate to the jury constitutes plain error in this case and warrants a new trial.

Based on our holding, we need not address Defendant's remaining argument. This case is remanded to the Superior Court of Pitt County for a new trial in accordance with the principles stated herein.

NEW TRIAL.

Judge STEELMAN concurs.

Judge HUNTER, Robert C. concurs in part and dissents in part in a separate opinion.

HUNTER, Robert C., Judge, concurring in part, dissenting in part.

I concur in Part III of the majority opinion holding that the trial court committed plain error in instructing the jury, warranting a new trial. However, because I conclude that the trial court erred in denying defendant's motion to dismiss the statutory rape charges for insufficient evidence of defendant's consciousness, I respectfully dissent in Part II of the majority opinion.

My concern with the majority's holding in Part II is that it sets a precedent which allows a defendant to be convicted of a crime even though the State's own evidence exculpates the defendant of that crime, and the State attempts to prove its case solely by requiring the jury to disbelieve the State's evidence without offering any affirmative evidence to support all the elements of the charge. The prosecution's own evidence in this case directly contradicted its theory that defendant was conscious during the acts charged. N.B., the State's

main witness and the purported victim, testified that defendant was unconscious when the sexual acts occurred, and her testimony was corroborated by her mother and the officer who took her statement during the investigation. The prosecution essentially asked the jury to disregard the evidence it presented and to find that defendant was in fact conscious, despite the fact that no evidence was presented to support that theory. The prosecution presented some evidence, such as defendant's letters to N.B., which amounted to circumstantial evidence that there was an inappropriate relationship, or that defendant sought an inappropriate relationship, but there was no evidence whatsoever that defendant was conscious when the alleged statutory rapes occurred. A criminal defendant cannot be convicted on what the jury, or this Court, might suspect happened. There must be actual evidence to support the prosecution's case.

In sum, the prosecution presented *circumstantial evidence* that defendant had an inappropriate relationship with N.B. That is irrelevant. The prosecution raised, at best, a *circumstantial suspicion* that defendant was conscious when the sexual acts occurred. Circumstantial suspicion is not enough to overcome a motion to dismiss.

## Analysis

The standard of review on appeal of a trial court's denial of a criminal defendant's motion to dismiss for insufficient evidence is whether the State offered substantial evidence to show the defendant committed each element required to be convicted of the crime charged. *State v. Williams*, 154 N.C. App. 176, 178, 571 S.E.2d 619, 620 (2002). " 'Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt.' " *State v. Alston*, 131 N.C. App. 514, 518, 508 S.E.2d 315, 318 (1998) (citation omitted). "The evidence must be viewed in the light most favorable to the State, and the State must receive every reasonable inference to be drawn from the evidence." *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996) (citation omitted). "If the evidence, when considered in the light of the foregoing principles, is sufficient only to raise a suspicion, even though the suspicion may be strong, as to either the commission of the crime or that the defendant on trial committed it, the motion for dismissal must be allowed." *State v. Davis*, 74 N.C. App. 208, 212-13, 328 S.E.2d 11, 14-15 (1985). A trial court's denial of a motion to dismiss for insufficient evidence is a question of law, reviewed *de novo* upon appeal. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007).

**STATE v. TYSON**

[195 N.C. App. 327 (2009)]

A defendant may be guilty of statutory rape if "the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person." N.C. Gen. Stat. § 14-27.7A(a) (2007). However, "where a person commits an act without being conscious thereof, the act is not a criminal act even though it would be a crime if it had been committed by a person who was conscious." *State v. Jerrett*, 309 N.C. 239, 264, 307 S.E.2d 339, 353 (1983). "[U]nder the law of this State, unconsciousness . . . is a complete defense to a criminal charge," *State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975), because unconsciousness "excludes the *possibility of a voluntary act* without which there can be no criminal liability." *Id.* at 295, 215 S.E.2d at 366.

The ultimate burden rests on the State to prove beyond a reasonable doubt every element necessary to convict a defendant. "[N]ormally the presumption of mental capacity is sufficient to prove that [a defendant] acted consciously and voluntarily and the prosecution need go no further." *Id.* at 298-99, 215 S.E.2d at 368. However, this presumption may be overcome by sufficient evidence to the contrary. If sufficient evidence of the defendant's unconsciousness "arises out of the State's own evidence," the burden rests on the State to prove the defendant's consciousness beyond a reasonable doubt. *Id.* at 290, 215 S.E.2d at 363. Accordingly, the State had to prove beyond a reasonable doubt the elements of statutory rape in N.C. Gen. Stat. § 14-27.7A(a), and, as the evidence of defendant's unconsciousness arose out of the State's evidence, the State had to prove beyond a reasonable doubt that defendant was conscious when he committed the acts charged. *Id.*

Thus, the question before this Court is whether there is some evidence from which the jury could find beyond a reasonable doubt that defendant was conscious, and therefore committed voluntary acts, when he had sexual intercourse with N.B. I conclude there is not.

The State's evidence tends to show the following: On direct examination by the State, N.B. testified that she had given defendant pills and then waited until it looked like he was passed out. She then "unzipped his pants[,] pulled his privacy [sic] out and started jacking him off." She acknowledged that his penis became erect while she was doing this, and that "after [] a little bit of cum came out . . . I got on top of him." N.B. further testified on direct examination that during intercourse, defendant did not respond to her, did not say anything to her, did not move, and did not open his eyes.

N.B. admitted that the first time she was interviewed by Detective Dance, she told Dance that she had not had sex with defendant. She also admitted that the second time she spoke with Dance, she told her "part true and part story" in that she said she had given defendant a pill, but that, instead of saying she had gotten on top of defendant, she told Dance she had collected defendant's semen in a shot glass and then put the semen inside of herself with a turkey baster. N.B. testified, "I just lied because I didn't want to be in trouble" and said that she told a different story on the stand because "I don't want to go to jail for telling a lie."

The majority cites "the manifest inconsistencies in N.B.'s testimony" as to how she became pregnant as circumstantial evidence of defendant's consciousness. The consistent part of both stories was, however, that defendant was unconscious while N.B. performed sexual acts on him. The State offered no evidence to contradict this.

Alicia Kornegay testified that N.B. told her "she took and gave [defendant] a pill, and he was out and she took and said she unzipped his pants and she played with him and she got a little cup and she had a [turkey baster] and she placed it in herself. That's what she told me." Ms. Kornegay testified that the only thing she knew about N.B. having intercourse with defendant was what N.B. told her and that when she asked defendant about it, he said that he had no idea about any of it.

This testimony corroborates N.B.'s testimony that defendant was unconscious during intercourse, and none of Ms. Kornegay's testimony allows an inference that defendant was indeed conscious during intercourse with N.B.

Detective Dance testified that she first interviewed N.B. on or about 28 June 2006. During that interview, N.B. denied ever having sex with defendant. Detective Dance interviewed N.B. again on 10 July 2006. Detective Dance testified that during that interview, N.B. stated that she got pills that could "lay a person out." N.B. stated that she put two pills in defendant's drink after he had "come home tired from drinking and smoking drugs." She said that "when she gave it to him[,] he couldn't move or anything." N.B. stated to her that he was "dead-weight" and that she couldn't lift him to get his pants off so she unzipped his pants and pulled out his genitals. She then told Dance that she started "messing" with him and then used a shot cup and a turkey baster to collect his semen and put it into herself. She told Dance that "the next day he acted like he didn't remember anything"

and that he "only said that his head was hurting." She told Dance that she had done this two different times.

Dance further testified that on 29 June 2006, she interviewed Ms. Kornegay. Dance testified that Ms. Kornegay told her N.B. had told Ms. Kornegay that she had given defendant a pill and that after giving him the pill, N.B. had sex with defendant. Ms. Kornegay said N.B. told her she was the one that did it to him and that he did not remember doing things with her. Detective Dance never interviewed defendant or asked him to give a statement.

Like N.B.'s and Ms. Kornegay's testimony, Detective Dance's testimony provides no evidence that defendant was conscious during intercourse with N.B. and, in fact, corroborates prior testimony that defendant was unconscious.

Neil Elks, a captain of the patrol division of the Pitt County Sheriff's Department, testified to an alleged conversation he had with defendant at the Detention Center on or about 16 August 2006. Elks testified that defendant told him "they had him for something he didn't do." Elks testified that defendant said "his wife's daughter had got him drunk, he had passed out, and then she got him off and she used a turkey baster to put his stuff inside of her and she got pregnant." Elks further testified that he told defendant he was going to have to come up with a better story than that, and that defendant had responded, " '[y]ou don't think anyone will believe that?' " According to Elks, defendant then said, " '[o]kay. I need to think of something else to say.' "

While the majority concludes that "[d]efendant's statement to Elks that he would 'need to think of something else to say' " is circumstantial evidence that defendant was conscious during the two acts of sexual intercourse with N.B., nothing in this statement provides any evidence of defendant's consciousness. At most, this statement suggests that defendant considered changing some part of his story that "his wife's daughter had got him drunk, he had passed out, and then she got him off and she used a turkey baster to put his stuff inside of her and she got pregnant" because people might not believe it. Defendant did not state that the story recounted to Elks was untruthful; no witness testified to defendant giving a contradictory version of the story that he had recounted to Elks and defendant did not take the stand and testify to a contradictory version of events.

Shawn Weiss, an expert in the field of DNA analysis, testified that, based on DNA tests done on N.B., her two children, and defend-

ant, the probability that defendant was the father of N.B.'s two children was 99.99 percent. Although this may provide substantial evidence that defendant and N.B. had sexual intercourse, that is not the issue on appeal. The issue to be determined is whether the State offered sufficient evidence that defendant was conscious during the intercourse. The DNA evidence has no relevance to the determination of this essential issue.

Other evidence introduced by the State included two drawings sent to N.B. by defendant while he was in jail awaiting trial on the current charges. One depicted a male, a female, and a baby, and the other depicted a male, a female, a baby standing, and a baby being held. Although N.B. acknowledged that the children in the second drawing represented her children, she stated that the male figure depicted in each drawing represented her boyfriend, Dominic. While it could be surmised that the drawing depicted N.B., defendant, and their children, this is not evidence that defendant was conscious during the intercourse that resulted in the children's births.

The State also offered into evidence several letters defendant had written to N.B. Excerpts from some of these letters are as follows:

"So what's the deal, Baby? Can I get in them drawers. . . ."

"Quit smiling saying to yourself right now. Yes, you can."

. . .

"P.S. What's the deal, Shorty, can I get in them drawers?"

"P.S. Quit smiling."

. . .

"Big Daddy 4-life."

. . .

The only way to ensure that this cycle be broken is to live for the Lord, but I can't even do that because of things I don't regret, but maybe should have done differently. . . .

. . .

I hate you have to go back through that kind of pain, but this time I'll be at the hospital with you. Okay.

. . .

Good night my darling one. I love you more than you can ever know.

. . .

"Age Ain't Nothing But a Number[.]"

Both N.B. and Ms. Kornegay testified that the phrase, " '[s]o what's the deal, Baby? Can I get in them drawers. . . .' " " 'Quit smiling saying to yourself right now. Yes, you can[]' " came from a song and was said often around their house.

The State offered no evidence to contradict N.B. or Ms. Kornegay's explanation of the meaning of the song lyrics. Even if the lyrics were taken literally as defendant asking N.B. if he could "get in [her pants];" this could only provide circumstantial evidence of defendant's improper motives towards N.B. and does not provide any evidence of defendant's consciousness during the sexual acts testified to by N.B. In fact, N.B. testified that defendant was unconscious, and her testimony was corroborated by other witnesses. N.B. was never inconsistent in her assertion that defendant was unconscious and no one testified to the contrary. Whether or not defendant wanted to pursue a sexual relationship with N.B. is not relevant evidence pertaining to defendant's consciousness in this case.

Another letter from defendant to N.B. stated, in pertinent part:

You always act like you're so into me, can't live without me. As soon as you're out of my sight you don't give a damn about me. I don't even matter then.

. . .

You only, you're only crazy about me when you're around me, but the minute you're gone, who the hell is Malcolm? Some part of [N.B.] will never change, and you and I both know what parts they are, don't we?

Again, while this may be evidence of defendant's improper motives towards N.B., the letter does not provide any evidence of defendant's consciousness during intercourse with N.B.

Defendant offered no evidence. The State offered no evidence to refute N.B.'s testimony at trial or statements to other witnesses that defendant was unconscious during intercourse with her. While the evidence was sufficient to establish each of the four elements of statutory rape listed in N.C. Gen. Stat. § 14-27.7A, the State offered no evidence to show that defendant acted consciously and voluntarily.

The State attempted to carry its burden of proof to show defendant was conscious and acted voluntarily by putting N.B. and Ms. Kornegay on the stand to give what the State then argued to be false testimony. As defendant pointed out, it was not up to defendant to impeach the exculpatory testimony given by the State's own witnesses. In its closing argument, the State argued that N.B.'s testimony was "just unbelievable" and that "[i]t just doesn't work that way. A man's knocked out. Unconscious, he's not going to be erect. He's not going to be ejaculating." However, "final arguments 'are not evidence[,]' " *State v. Cummings*, 361 N.C. 438, 468, 648 S.E.2d 788, 806 (2007), and the State offered no evidence, medical or otherwise, that defendant would not have been able to maintain an erection under the influence of incapacitating drugs. Furthermore, the State offered no contradictory statements made by any witnesses or by defendant himself that he was conscious during the intercourse or that he remembered the intercourse.

The State cannot prove beyond a reasonable doubt any element of a crime charged by offering evidence which the State subsequently argues to be false, and then requiring the jury to conclude that, because the evidence was false, the State's theory must be true. In the absence of credible evidence to the contrary, the State must offer some affirmative evidence for a jury to believe. There is no doctrine of *res ipsa loquitor* in the criminal law.

The trial court stated that the statute "[d]oesn't say who brought [the intercourse] on; who—who did anything. Just says man can't penetrate a child, whether she consents, jumps on him or whatever." Defendant argued, "[h]owever, the actions have to be voluntary on the part of the defendant." The trial court responded, "[t]hat's a jury question." However, the issue of defendant's consciousness may only be submitted to the jury if the trial court determines that there was sufficient evidence from which the jury could find beyond a reasonable doubt that defendant was conscious. In this case, based on the evidence presented by the State, there was at most circumstantial evidence that defendant and N.B. had an inappropriate relationship, or that defendant sought an inappropriate relationship. There was not sufficient evidence to prove that defendant consciously committed the crime charged such that the case should have been presented to the jury.

Just as the State has the burden of proving that a defendant is not entitled to the complete defense of self-defense on a charge of

assault, *see State v. Poland*, 148 N.C. App. 588, 597, 560 S.E.2d 186, 192 (2002) ("[t]he State has the burden of proving that a defendant is not entitled to the defense [of self-defense]"), or homicide, *see State v. Watson*, 338 N.C. 168, 180, 449 S.E.2d 694, 701-02 (1994) ("[w]henever there is evidence that a defendant charged with a homicide killed in self-defense, the State has the burden of proving beyond a reasonable doubt that he did not"), and the sufficiency of the State's evidence is the proper subject of a motion to dismiss even though self-defense is not a statutory element of those crimes, *see, e.g. Poland*, 148 N.C. App. at 597, 560 S.E.2d at 191 (considering whether the trial court erred in denying defendant's motion to dismiss the charge of assault for insufficient evidence that defendant did not act in self-defense); *Watson*, 338 N.C. at 179-81, 449 S.E.2d at 701-02 (considering whether the trial court erred in denying defendant's motion to dismiss the charge of homicide on the ground that the State failed to prove defendant did not act in self-defense), here the sufficiency of the State's evidence of defendant's consciousness, and thus his commission of a voluntary act, was a proper subject of defendant's motion to dismiss. Based on the substantial evidence presented by the State that defendant was unconscious when the alleged sexual acts occurred, and the dearth of evidence to support the State's intended theory that defendant was in fact conscious during the acts, the motion to dismiss should have been granted.

I conclude that the State offered no evidence from which a jury could find beyond a reasonable doubt that defendant was conscious and, therefore, committed voluntary acts, when his penis penetrated N.B.'s vagina. Moreover, assuming *arguendo* the evidence cited by the majority provides circumstantial evidence of defendant's consciousness, such evidence merely creates a suspicion that defendant was conscious during the acts charged, and thus, would not support a finding beyond a reasonable doubt that defendant was conscious.

Again, I am concerned about the precedent set by the majority in this opinion. What the jury or I may suspect happened is not grounds for a conviction. There must be substantial evidence that a crime occurred and that defendant voluntarily committed it. Such evidence was not presented in this case.

As the State failed to meet its burden of proof, the trial court erred in denying defendant's motion to dismiss. I would thus vacate the trial court's judgment.