ARROWOOD, Judge.
Raymond Reed ("defendant") appeals from judgment entered upon his conviction for indecent liberties with a child. On appeal, defendant argues the trial court improperly denied his request for a jury instruction on unconsciousness. For the reasons stated herein, we find no error.
I. Background
On 1 August 2016, an Alamance County grand jury indicted defendant for three counts of indecent liberties with a child. On 8 May 2017, the case came on for trial in Alamance County Superior Court, the Honorable G. Wayne Abernathy presiding. The State's evidence tended to show as follows. Around Christmas of 2014, ten-year-old Millie[1] lived with her mother, stepfather, and siblings. Her grandparents lived next door. During this time, Millie's step-uncle, defendant, was in his late 20's and lived with Millie's grandparents. One night, Millie, her twin sister, her two step-brothers, and defendant all slept in the living room of Millie's grandparents' trailer. Defendant slept on a pallet on the floor, between Millie and her sister. One of the step-brothers slept on a couch, with the other step-brother near him.
Millie woke during the night and defendant's "hand [was] between [her] legs[,]" "closer to [her] private part." He then put his hand under her shirt, on her breast, "rubbing it back and forth." Next, defendant put Millie's hand on "[h]is front private part." When asked what defendant did with her hand on his "private part," Millie explained, "He-sometimes he rubbed it back and forth and left it alone and then he did that over and over again sometimes." Millie pretended to be asleep while defendant touched her.
When defendant stopped touching her, Millie pretended to wake up. She went to the bathroom because she "needed to figure out what to do." When she returned to the living room, defendant asked her several times if she was mad at him. Millie did not return to the pallet on the floor, and laid on the couch instead. She could not go back to sleep because she "didn't know what [defendant] was going to do." Millie testified, "I think he knew what happened. I don't think he knew that I knew what happened."
In August 2015, Millie's mother asked her if she wanted to spend the night with her grandparents, where defendant was staying. Millie declined, which surprised her mother. Millie's mother kept asking Millie why she did not want to stay with her grandparents, and, eventually, Mille told her mother about the incident with defendant. Millie's mother contacted law enforcement.
On 11 August 2015, Lieutenant Bobby Baldwin of the Alamance County Sheriff's Office interviewed Millie. The next day, a warrant was issued for defendant's arrest.
Once the State rested its case, defendant made a motion to dismiss. The trial court denied the motion. Defendant offered no evidence, and renewed the motion to dismiss. The trial court allowed the motion with respect to the second and third counts of the indictment.
At the charge conference, defendant orally requested a jury instruction on the affirmative defense of unconsciousness. The trial court denied the request. Following counsel's closing arguments, the trial court charged the jury.
On 11 May 2017, the jury found defendant guilty of indecent liberties with a child. The trial court sentenced defendant to 13 to 25 months of imprisonment, with all but 120 days to be suspended on the condition of 30 months of supervised probation following his discharge from the Department of Adult Corrections. The trial court also ordered defendant to register as a sex offender for 30 years.
Defendant appeals.
II. Discussion
The sole issue on appeal is whether the trial court erred by denying defendant's request for a jury instruction on the affirmative defense of unconsciousness.
Defendant requested an unconsciousness instruction at the charge conference. Therefore, we review the court's denial of defendant's request for an instruction de novo. See N.C.R. App. P. 10(a)(2) (2018); State v. Rowe , 231 N.C. App. 462, 469, 752 S.E.2d 223, 227 (2013) ("For the purposes of Rule 10(a)(2), a request for instructions constitutes an objection."); State v. Osorio, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citation omitted).
"[N]ormally the presumption of mental capacity is sufficient to prove that [a defendant] acted consciously and voluntarily and the prosecution need go no further." State v. Tyson , 195 N.C. App. 327, 330-31, 672 S.E.2d 700, 703 (2009) (citation and internal quotation marks omitted). However, a defendant may overcome this presumption by establishing the affirmative defense of unconsciousness by a preponderance of the evidence. Id. at 331, 672 S.E.2d at 703-704 (citations omitted); see also State v. Caddell, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975) ("[U]nconsciousness, or automatism, is a complete defense to a criminal charge[.]"). The defendant has the burden to establish the defense. Caddell , 287 N.C. at 290, 215 S.E.2d at 363.
To determine whether the evidence is sufficient to warrant a jury instruction on unconsciousness "[t]he test ... is whether the evidence of defendant's mental condition is sufficient to cause a reasonable doubt in the mind of a rational trier of fact as to whether the defendant has the ability to form the necessary specific intent." State v. Andrews , 154 N.C. App. 553, 557, 572 S.E.2d 798, 801 (2002) (citation and internal quotation marks omitted). The trial court need not give an instruction that is not supported by a reasonable view of the evidence. Id. at 557, 572 S.E.2d at 801 (citation omitted). "[E]evidence merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury" because "such facts and circumstances as raise only a conjecture or suspicion ought not to be allowed to distract the attention of juries from material matters[.]" State v. Clark, 324 N.C. 146, 162-63, 377 S.E.2d 54, 64 (1989) (citations omitted).
Defendant contends a jury instruction on unconsciousness was appropriate because the State did not present evidence that defendant was awake during the incident. To support this argument, defendant relies on State v. Connell , 127 N.C. App. 685, 493 S.E.2d 292 (1997), disc. review denied , 347 N.C. 579, 502 S.E.2d 602 (1999) and State v. Bush , 164 N.C. App. 254, 595 S.E.2d 715 (2004).
In Connell , our Court held that, based on the record before it, the trial court below erred by not instructing on unconsciousness when there was no direct evidence the defendant was awake and the victim admitted defendant may have been asleep. Connell , 127 N.C. App. at 692, 493 S.E.2d at 296. The evidence in Connell showed that the defendant went to sleep alone in his sexual partner's bed. Id. at 687, 493 S.E.2d at 293. His partner, the victim's mother, testified at trial that "as far as she knew" the defendant was asleep when she joined him. Id. at 687, 493 S.E.2d at 293. Subsequently, the victim had a bad dream, and her mother permitted her to get in the bed between her and the defendant. Id. at 687, 493 S.E.2d at 293. Before the victim fell asleep,
she felt the defendant's hand on her leg and pushed it away. Then, as she was falling asleep, she felt the defendant place his hand in her underwear and testified that he was "rubbing on me and stuff." The victim testified that she pushed the defendant's hand away again and switched places in bed with her mother.
Id. at 687, 493 S.E.2d at 293. There was no testimony that the defendant ever awoke, and "the victim testified that she did not know whether the defendant was awake or asleep at the time of the incident." Id. at 687, 493 S.E.2d at 293. Based on this evidence, our Court ruled it was plain error for the trial court to fail to instruct on unconsciousness, explaining:
there [was] no direct evidence that the defendant was awake at the time of the alleged touching. Even the victim admitted she did not know whether the defendant was asleep or awake. Although our research discloses no case law as to whether being asleep is an appropriate circumstance that requires an unconsciousness or diminished capacity instruction, we conclude that on this record both instructions would be proper. Moreover, had the jury here been instructed that if they found that defendant was unconscious or, more specifically, asleep, they must find defendant not guilty, the outcome of the trial likely would have been different.
Id. at 692, 493 S.E.2d at 296.
Our Court also considered whether a trial court erred by failing to instruct on unconsciousness in Bush . Bush , 164 N.C. App. at 264, 595 S.E.2d at 721. In Bush , the victim and her sister went to sleep in the same bed as their mother and the defendant. Id. at 255, 595 S.E.2d at 716. The victim testified that, during the night, the defendant rubbed her genital area and inserted his finger into her vagina. Id. at 256, 595 S.E.2d at 716. Afterwards, the victim went to the bathroom. Id. Her mother asked her what was wrong, and defendant went to the living room and smoked a cigarette. Id. at 256, 595 S.E.2d at 716-17.
As in Connell , "there [was] no direct evidence that the defendant was awake at the time of the alleged touching".... [The victim] testified that "no one moved or no one appeared to be awake" at the time the alleged touching occurred. She further testified that defendant did not speak at all during the alleged touching, nor did he react to the jerky movements she made in response to the touching.
Id. at 265, 595 S.E.2d at 722. Accordingly, Bush held that Connell was controlling, and, assuming similar evidence was adduced, the trial court at any new trial should properly instruct the jury on unconsciousness. Id. at 265-66, 595 S.E.2d at 722.[2]
Defendant argues Connell and Bush are almost factually identical to the case sub judice because there was no direct evidence that he was awake when he touched Millie, and, thus, we should hold the trial court erred by failing to instruct on unconsciousness. We disagree.
Under North Carolina law, there is a presumption of consciousness. Tyson , 195 N.C. App. at 330-31, 672 S.E.2d at 703. Before an unconsciousness instruction is warranted, a reasonable view of the evidence must support that defendant was unconscious. Andrews , 154 N.C. App. at 557, 572 S.E.2d at 801 ; see State v. Lampkins , 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973). In both Connell and Bush , there was evidence, through the mothers' and victims' testimonies, that the defendants were unconscious during their respective incidents. See Connell , 127 N.C. App. at 687, 493 S.E.2d at 293 ; Bush , 164 N.C. App. at 265, 595 S.E.2d at 722.
In contrast, here, although Millie testified they all went to sleep in the living room together, there was nothing in her testimony to support that defendant was unconscious, or asleep, when he touched her. Instead, Millie testified to defendant's awareness of his actions during the incident: "I think he knew what happened." Defendant's consciousness is further supported by defendant asking Millie if she was mad at him immediately following the incident. We hold her testimony, as well as the entirety of the evidence, did not support that defendant was unconscious under a reasonable view of the evidence. Thus, defendant was not entitled to an unconsciousness instruction, and the State was not required to rebut evidence of unconsciousness with evidence that defendant was awake.
III. Conclusion
We are not convinced that there was sufficient evidence to warrant an unconsciousness instruction in this case. Therefore, the trial court did not err by declining to instruct the jury on unconsciousness based on the record before it.
NO ERROR.
Report per Rule 30(e).
Judges DILLON and DIETZ concur.

A pseudonym is used to protect the identity of the juvenile. See N.C.R. App. P. 3.1(b) (2018).

We are not bound by Bush 's holding that the trial court erred by failing to instruct on unconsciousness because it is dicta . See Bush , 164 N.C. App. at 264, 595 S.E.2d at 721 (stating the Court's order for a new trial was not based on the consideration of the failure to instruct on unconsciousness); see Trustees of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc. , 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion not necessary to the decision is obiter dictum and later decisions are not bound thereby.") (citations omitted).